The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Nina B. RICE, Defendant–Appellant.

No. 05CA0931.

Colorado Court of Appeals, Div. III.

May 15, 2008.

Rehearing Denied July 10, 2008.

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Nina B. Rice, appeals from the judgment of conviction entered upon a jury verdict finding her guilty of computer crime. We reverse and remand for a new trial.

## I. Background

Evidence at trial established that, in 2003, defendant filed for unemployment compensa-

tion benefits with the Colorado Department of Labor and Employment. To do so, she utilized the Department's CUBLine, an interactive computer system with which unemployment claimants communicate over the telephone.

For over five months, defendant contacted the CUBLine to make biweekly claims for unemployment benefits. Each time she contacted the CUBLine, the computer system asked defendant if she had worked during the week for which she claimed unemployment benefits. Each time, she pressed the number on her telephone corresponding to an answer of "no." In fact, she was employed at the time, and she concedes that she lied in her CUBLine responses.

Defendant was charged by information with the crimes of theft and computer crime. The theft count alleged that defendant intended to permanently deprive the Department of money, and the computer crime count alleged that she accessed a computer for the purpose of obtaining money from the Department or committing theft. At trial, she testified that she believed the money she received from her unemployment claims belonged to her and had been withheld from her paychecks issued by her previous employer.

The jury was unable to reach a verdict on the theft count and found defendant guilty of computer crime. The jury also convicted defendant of false swearing, a lesser nonincluded offense submitted to the jury at defendant's request. Defendant was subsequently sentenced to five years probation. This appeal followed.

## II. Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support the jury's verdict of guilty on the computer crime count. Specifically, she contends the evidence was insufficient to establish that she "accessed" a computer or computer system within the meaning of the term "access" as used in section 18–5.5–102(1)(c)–(d), C.R.S.2007. We disagree.

When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999); *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988); *People v. Jaramillo*, 183 P.3d 665, 670 (Colo.App.2008). We must give the prosecution the benefit of every reasonable inference fairly drawn from the evidence. Further, the determination of the credibility of the witnesses is solely within the province of the fact finder. *Kogan*, 756 P.2d at 950; *Jaramillo*, 183 P.3d at 670.

The prosecution charged defendant with computer crime pursuant to subsections (c) and (d) of section 18–5.5–102(1). Under those subsections,

A person commits computer crime if the person knowingly:

. . .

(c) Accesses any computer, computer network, or computer system, or any part thereof to obtain, by means of false or fraudulent pretenses, representations, or promises, money; property; services; passwords or similar information through which a computer, computer network, or computer system or any part thereof may be accessed; or other thing of value; or

(d) Accesses any computer, computer network, or computer system, or any part thereof to commit theft. . . .

§ 18–5.5–102(1)(c)–(d).

Here, the prosecution presented evidence that defendant made biweekly unemployment benefits claims by calling an automated phone system, the CUBLine, maintained by the Department. An employee of the Department testified that the CUBLine is a "computerized system, which uses interactive voice response technology." She further testified that an unemployment benefits claimant identifies himself or herself by entering a Social Security number and a personal identification number using numbers on a telephone when prompted by the system. The system then asks the claimant a number of questions related to "weekly eligibility requirements, such as . . . did you work during the weeks you are claiming?" The claimant

responds by pressing "1" for "yes" and "9" for "no." This procedure is described in a brochure that was admitted into evidence at trial and, according to the record, was given to defendant to review before she made her first biweekly claim. When the computer system determines a claimant is eligible for unemployment benefits, a computer prints a check that is automatically sent to the claimant. Typically, an eligible claimant completes a claim and receives a check without interacting with a person.

The evidence showed that defendant used the CUBLine to make biweekly claims for unemployment benefits. Each time the computer system asked if she worked during the week for which she was claiming benefits, defendant entered "9" for "no," even though she was, in fact, working.

Defendant contends that she did not "access" a computer within the meaning of section 18–5.5–102(1)(c)–(d) by making a phone call and pressing telephone buttons in response to the CUBLine questions. We disagree.

Statutory interpretation is a question of law we review de novo. *Bostelman v. People*, 162 P.3d 686, 689 (Colo.2007).

In construing a statute, our primary purpose is to ascertain and give effect to the intent of the General Assembly. *People v. Weiss*, 133 P.3d 1180, 1184 (Colo.2006). We look first to the language of the statute itself, giving words and phrases their plain and ordinary meaning. *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004). We read words and phrases in context, and construe them according to their common usage. *Bostelman*, 162 P.3d at 690; *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). When the statutory language is clear and unambiguous, there is no need to resort to interpretive rules and statutory construction. *Jones v. Cox*, 828 P.2d 218, 221 (Colo.1992).

"Access" is not defined in the Colorado Criminal Code. However, it is a term of common usage, and persons of ordinary intelligence need not guess at its meaning. We, therefore, begin with the dictionary definition in determining the plain and ordinary mean-

ing of "access." *See People v. Janousek*, 871 P.2d 1189, 1196 (Colo.1994); *Jaramillo*, 183 P.3d at 671. *Black's Law Dictionary* 14 (8th ed.2004) defines the word "access" as "[a]n opportunity or ability to enter, approach, pass to and from, or communicate with."

Viewing the evidence in the light most favorable to the prosecution, *Sprouse*, 983 P.2d at 777, we conclude defendant accessed, within the ordinary meaning of the term, a computer system, because she communicated with the CUBLine by inputting data in response to computer-generated questions. Also, the CUBLine was described in testimony at trial sufficient to support a finding that it was a "computer system" as that term is defined in section 18–5.5–101(6), C.R.S.2007.

We reject defendant's contention that we must go beyond the ordinary meaning of the term "access" to interpret section 18–5.5–102(1)(c)–(d). We need not consider other rules of statutory interpretation because the term "access," as used in section 18–5.5–102(1)(c)–(d), is clear and unambiguous under the facts of this case. *See Jones*, 828 P.2d at 221.

In any event, we disagree with defendant's various arguments in support of a narrower definition of "access." First, the out-of-state cases cited by defendant are factually distinguishable from this case. *See State v. Rowell*, 908 P.2d 1379, 1381–83 (N.M.1995)(defendant did not "access" computer within statutory definition by communicating with actual persons through long distance phone system maintained by computers); *People v. Jemison*, 187 Mich.App. 90, 466 N.W.2d 378, 380 (1991)(defendant did not "cause access to be made" to a computer by communicating with actual person who eventually fed information into computer system or network). Unlike the defendants in *Rowell* and *Jemison*, defendant here provided fraudulent information directly to a computer system, rather than an actual person.

Second, because we conclude the term "access," as used in section 18–5.5–102(1)(c)–(d), is not ambiguous, we reject defendant's contention that the rule of lenity requires us to adopt her interpretation. *See Frazier v. People*, 90 P.3d 807, 811 (Colo.2004) ("application of the rule of lenity is a last resort and

will not be applied when we are able to discern the intent of the General Assembly").

■ Third, we reject defendant's contention that section 18–5.5–102(1)(c)–(d) would be rendered unconstitutionally vague if the term "access" were given its ordinary meaning.

■ A statute is void for vagueness if the statute "forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *People v. Pahl,* 169 P.3d 169, 187 (Colo.App.2006)(quoting *People v. Becker,* 759 P.2d 26, 31 (Colo.1988)).

The ordinary meaning of "access" is not confusing or overly technical, and is readily understandable by an ordinary person of reasonable intelligence. *Cf. id.* . Contrary to defendant's contention, the term is not susceptible of application to an endless set of facts. Rather, the language in section 18–5.5–102(1) limits its application by providing that "[a] *person* commits computer crime if *the person knowingly* . . ." (emphasis added).

Here, defendant's act of direct communication with a computer system falls within the ordinary meaning of "access." *See Black's Law Dictionary* 14. We thus conclude section 18–5.5–102(1)(c)-(d) will not be rendered unconstitutionally vague, either on its face or as applied here, if the term "access" is given its ordinary and plain meaning. *See Pahl,* 169 P.3d at 187–88.

We decline to address defendant's equal protection argument, because that argument was not raised in the trial court. *See People v. Kitsmiller,* 74 P.3d 376, 378 (Colo.App. 2002).

### III. Constructive Amendment or Simple Variance

■ Defendant contends the evidence and argument presented by the prosecution at trial, combined with the elemental jury instruction on computer crime, constituted an impermissible expansion of the charge as set forth in the information. We agree and conclude defendant is entitled to a new trial on this charge.

■ There are two types of variances between the charge contained in the charging instrument and the charge of which a defendant is convicted. *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996); *Pahl,* 169 P.3d at 177. A simple variance occurs when the charged elements are unchanged, but the evidence proves facts materially different from those alleged in the charging instrument. *Pahl,* 169 P.3d at 177. A constructive amendment occurs when the jury instructions change an essential element of the charged offense to the extent the substance of the charging instrument is changed. *Id.*

A simple variance does not require reversal unless it prejudices the defendant's substantial rights, but a constructive amendment is reversible per se. *Id.*

Here, count I of the second amended complaint and information alleged that defendant committed the crime of theft by exercising control over money with "the intent to ·deprive the Colorado Department of Labor and Employment permanently of the use and benefit" of the money. Count II alleged that defendant committed computer crime when she "access[ed] a computer . . . for the purpose of obtaining money from the Colorado Department of Labor and Employment . . . or committing theft."

At trial, defendant testified and conceded that (1) she lied to obtain money; (2) the money in fact belonged to the Department; and (3) the alleged value of the money was between $500 and $15,000. Her defense was that, at the time she obtained the money, she mistakenly believed the money belonged to her, rather than to the Department. Based on her concessions, she submitted an elemental instruction for the lesser nonincluded offense of false swearing, and urged the jury to convict her of that offense.

The jury was given the following elemental instruction on the theft count:

The elements of the crime of theft are:

1. That the defendant,

. . .

3. Knowingly

   a. obtained or exercised control over

   b. anything of value

c.  which was the property of another person

d.  by deception, and,

4.  with the intent to permanently deprive the other person of the use or benefit of the thing of value....

The jury was given the following elemental instruction on computer crime:

The elements of the crime of Computer Crime are:

1.  That the defendant,

...

3.  knowingly,

4.  accesses any computer [or] computer system ...,

5.  for the purpose of obtaining money by false or fraudulent pretenses, representation, or promises; or for the purpose of committing theft....

This instruction accurately reflects the language of section 18–5.5–102(1)(c)–(d).

During closing argument, the prosecution argued that it could prove computer crime by proving that defendant accessed the CUB-Line either (1) "with the purpose of obtaining unemployment [benefits] by misrepresenting her [employment] status," regardless of who she believed the money belonged to, or (2) with the "intent to permanently deprive the Department ... of money." Thus, while the prosecution's argument and the jury instructions accurately stated the law that the prosecution need not prove a defendant intended to take the money of another person to prove computer crime, *see* § 18–5.5–102(1)(c), the prosecution's argument and the elemental instruction on computer crime differed from the precise charge alleged in the information by expanding the scope of defendant's alleged purpose for obtaining money.

In her closing argument, defendant specifically conceded all elements of the theft charge with the exception of the specific intent to permanently deprive another person of a thing of value.

The record shows that, during deliberations, the jury indicated several times that it had reached a unanimous verdict on the computer crime and false swearing counts, but was deadlocked on the theft count. After the court gave the jury a modified-*Allen* charge, the jury was still unable to reach a verdict on the theft charge. The jury found defendant guilty of computer crime and false swearing, and the prosecution later dismissed the theft charge.

Although defendant frames her contention in terms of a constructive amendment, she relies primarily on *People v. Simmons*, 973 P.2d 627 (Colo.App.1998), and argues that, because the jury instructions removed the named victim from the offense of computer crime, and, in light of the prosecution's closing argument, the allegations she faced at trial materially differed from the allegations set forth in the information. Thus, she argues her ability to present a defense was undermined by the variance. Accordingly, in our view, her argument is more properly framed in terms of an impermissible simple variance. *See Pahl*, 169 P.3d at 177–78; *Simmons*, 973 P.2d at 629–30.

In any event, we conclude the variance here did not constitute a constructive amendment, *see Rodriguez*, 914 P.2d at 258; *Pahl*, 169 P.3d at 177–78, and we thus turn our analysis to whether the simple variance between the information and the elemental jury instruction on computer crime constitutes reversible error. *See Pahl*, 169 P.3d at 177–78.

A simple variance is not a ground for reversal unless it is material to the merits of the case or prejudicial to the defendant. *Id.* at 178. A reviewing court considers the surrounding circumstances when determining whether a simple variance in an information caused prejudice. *Id.*

We apply a plain error analysis here because defendant did not object to the instruction or otherwise raise this issue in the trial court. *See Simmons*, 973 P.2d 627. Plain error occurs when a reviewing court can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* (citing *People v. Kruse*, 839 P.2d 1 (Colo. 1992))

Here, the charging language in the information provided defendant with notice of the factual circumstances surrounding the al-

leged offense so that she could adequately defend herself. *See People v. Williams,* 984 P.2d 56, 60 (Colo.1999). Specifically, the information put defendant on notice that she was charged with computer crime under the theory that she accessed the CUBLine with the purpose of obtaining money from the Department. Defendant does not challenge the sufficiency of the information itself.

Defendant attempted to counter the allegations in the information by arguing at trial that she believed the money she obtained belonged to her, and she, therefore, did not have the intent or purpose of obtaining money that belonged to the Department. Because defendant conceded all elements of the theft count except for the specific intent to permanently deprive the Department of its money, and the jury was unable to reach a verdict on that count, it is a fair assumption that the prosecution was unable to convince all the jurors beyond a reasonable doubt that defendant believed she obtained money that belonged to the Department. In our view, it is thus likely that some jurors were not convinced beyond a reasonable doubt that defendant accessed the CUBLine with the purpose of obtaining money *from the Department,* which the information alleged as the mens rea element of the computer crime offense. *See Simmons,* 973 P.2d at 629–30.

Contrary to the People's contention, this is not a case where a variance was harmless because, in light of the evidence, there was no risk that the jury's verdict could not be unanimous as to the identity of the victim. *See, e.g., People v. Foster,* 971 P.2d 1082, 1088 (Colo.App.1998). Here, the risk was that the jury could return a verdict that was not unanimous as to defendant's state of mind. The variance was not harmless because it undermined defendant's primary defense to all charges as alleged in the information. *See Simmons,* 973 P.2d at 629–30.

Under these circumstances, we conclude the variance created by the prosecution's closing argument and the jury instructions prejudiced defendant's rights to notice and an ability to present a defense. She presented a unified theory of defense that addressed the mens rea elements of both counts as set forth in the information, but the variance allowed the jury to convict her on the computer crime count even though some of the jurors could have accepted, and apparently did accept, her argument that she believed the money she obtained through the CUBLine belonged to her. Because we conclude the variance prejudiced defendant's substantial rights and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction, the variance constitutes plain and reversible error. *See Rodriguez,* 914 P.2d at 259 ("defendant is entitled to reversal if he was prejudiced, surprised, or hampered in his defense" (quoting *People v. Albo,* 195 Colo. 102, 106, 575 P.2d 427, 429 (1978)); *Simmons,* 973 P.2d at 630.

The judgment is reversed, and the case is remanded for a new trial on the charge of computer crime.

Judge TAUBMAN and Judge HAWTHORNE concur.