In the Matter of the Petition of J.N.H.,
Petitioner–Appellant,

and

Concerning B.B.M., a Child.

No. 08CA1235.

Colorado Court of Appeals,
Div. V.

April 16, 2009.

⬤═76(1)

Holland & Hart, LLP, Marcy G. Glenn, Denver, Colorado; Holland & Hart, LLP, Susan L. Combs, Jackson, Wyoming, for Petitioner–Appellant.

Opinion by Judge GRAHAM.

J.N.H. (petitioner) appeals from the order requiring him to seek adoption records, in order to learn the name of his birth father, through a confidential intermediary under section 19–5–305(2)(a), C.R.S.2008. Because, contrary to the trial court's conclusion, we discern that the statute permits petitioner to access the adoption records, we reverse and remand for further proceedings.

I.  Factual and Procedural Background

Petitioner's decree of adoption was finalized in September 1965. Through his certified adoption decree, he was able to locate and contact his birth mother.

In 2008, petitioner sought copies of his adoption records. A magistrate denied his request, finding he needed to proceed under section 19–5–305(2)(a)'s confidential intermediary provisions. He unsuccessfully sought district court review.

Petitioner appealed to this court. A motions division of this court issued an order to show cause with regard to the order's finality, but then deferred the issue of finality to the division.

II.  Finality

Before addressing the merits, we first conclude the order is final for purposes of appeal.

Generally, a judgment in a case is deemed final when it ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do except to execute the judgment. Finality of judgment is typically a prerequisite for appeal. *Civil Serv. Comm'n v. Carney,* 97 P.3d 961, 967 (Colo.2004).

When determining whether an order is final for purposes of appeal, we consider the order's legal effect, not merely its form. If an order has effectively ended the trial court proceeding, it should be treated as a final appealable order. *People v. Proffitt,* 865 P.2d 929, 931 (Colo.App.1993).

The order here is final because it ended the trial court proceeding. Petitioner sought only his adoption records. By denying that request the trial court ended that proceeding. We agree with petitioner that requiring him to use a confidential intermediary before concluding his appeal effectively prejudges the appeal's merits. Consequently, we will review the order.

III.  Section 19–5–305(2)(a)

Petitioner contends that the trial court erred by requiring him to use a confidential intermediary because section 19–5–305(2)(a) entitles adoptees to access their adoption records and the names of their birth parents without limitation if their adoptions were finalized before July 1, 1967, and his adoption was finalized in 1965. We agree.

When interpreting a statute, we seek to determine legislative intent by first

looking to the plain language of the statute. *Robles v. People*, 811 P.2d 804, 806 .(Colo. 1991). If the language of the.statute is clear, it is not necessary to resort to other rules of statutory interpretation. *Id.* If the words of a statute can be interpreted more than one way within the context of a statutory scheme, the.history of the statute may be useful in determining legislative intent. *Bynum v. Kautzky*, 784 P.2d 735, 737 (Colo.1989). "When a statute ·is amended it is presumed that the legislature intended to change the law." *Robles*, 811 P.2d at 806.

We analyze the language of section 19–5–305(2) de novo. *See Lauck v. E–470 Pub. Highway Auth.*, 187 P.3d 1148, 1150 (Colo.App.2008). In doing so, we give the words of the statute their plain and ordinary meaning. *Lawry v. Palm*, 192 P.3d 550, 565 (Colo.App.2008). We also read the words and phrases in context and construe them according to common usage. *Bostelman v. People*, 162 P.3d 686, 690 (Colo.2007). We will not adopt a construction that renders any term superfluous or leads to an unreasonable or absurd conclusion. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). If possible, we interpret a statute so as to give all of its parts "consistent and sensible effect" within the statutory scheme. *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199, 1204 (Colo.App. 2008).

Currently, access to records and papers in adoption matters is governed by section 19–5–305(2), which sets limits on access to adoption records as well as contact among adoptees, biological parents, adoptive parents, and siblings, depending upon· the date of the adoption. The statute provides in pertinent part:

[A]ccessibility of adoption records, in addition to inspection authorized by a court upon good cause shown ..., and the ability of a party to the adoption proceeding or the adoptee to contact the adoptee or another party, shall be governed by the following provisions based upon the date on which the adoption was finalized:

(a) Adoptions finalized prior to September 1, 1999.(I)(A) Except to the extent disclosure is made in designated adoptions and except for an original birth certificate that is obtained through the provisions of paragraph (d) of this subsection (2), all adoption records ... relating to adoptions finalized prior to September 1, 1999, shall remain confidential, and the names of the parties thereto and the name of the adoptee shall remain anonymous if the adoption was finalized on or after July 1, 1967. Such adoption records shall be accessible by any of the ·parties ..., through the appointment of a confidential intermediary ... who successfully obtains consent from the person sought to release such adoption records or by mutual consent of the reunited parties upon proof of identification....

....

(b) Adoptions finalized on or after September 1, 1999.(1)(A) Adoption records. All adoption records ... relating to adoptions finalized on or after September 1, 1999, shall be open to inspection and available for copying by. an adult adoptee, an adoptive parent of a minor adoptee, a custodial grandparent of a minor adoptee, or the legal representative of any such individual....

....

(C) Prior written statements of birth parents. Notwithstanding the provisions of sub-subparagraph (A) of this subparagraph (I), the adoption records shall not be open for inspection or available for copying with respect to any identifying information concerning a birth parent if such birth parent has previously provided the court and the child placement agency, if applicable, with a signed and notarized written statement, within three years after the final order of relinquishment or termination specifying that such parent wishes the identifying information concerning that parent to remain confidential.

§ 19–5–305(2)(a), C.R.S.2008.

In our view, the language of the statute is ambiguous. On one hand, the statute makes a specific exception for the *names* of parties to adoptions which were finalized prior to July 1, 1967, by stating that "the names of the parties thereto and the name of

the adoptee shall remain anonymous if the adoption was finalized on or after July 1, 1967," and providing no limitation for adoptions before that date. On the other hand, provisions which limit access to *records,* which are set forth immediately before and after that language, are confusing. The preceding language states that "all adoption records . . . relating to adoptions finalized prior to September 1, 1999, shall remain confidential." The succeeding language provides, that "[s]uch adoption records shall be accessible . . . through the appointment of a confidential intermediary . . . who successfully obtains consent from the person sought to release such adoption records." We note that the succeeding language does not state that adoption records "shall only be accessible . . . through the appointment of a confidential intermediary." Nevertheless, as written, the statute could be interpreted in a way that would allow an adult adoptee, such as petitioner, access to the name of his birth father, but not to the records of his adoption. Indeed, it appears that the magistrate used that interpretation in this case.

Petitioner, appearing pro se, submitted a letter to the magistrate that accompanied his "Motion for Good Cause in the Matter of The Adoption of [Petitioner]," explaining that he had been able to contact his birth mother and that there was "no longer a 'confidentiality' issue pertaining to [his] adoption or . . . adoption records," and that since his adoption was finalized in 1965, "there was no provision under Colorado Regulatory Statutes for anonymity between the adoption triad." At the hearing, petitioner drew the magistrate's attention to the legislative declaration in section 19–5–305(1). He attempted to explain that prior to 1967, records of adoption were only confidential with respect to the public at large, not the parties to the adoption. The magistrate stated that she did not agree with petitioner's interpretation and observed, "[R]ecords prior [sic] September 1st of 1999 were to remain confidential. You are correct, the second part of that phrase does not apply to you with regard to anonymous or anomity [sic], but the first part [of] that paragraph does apply to you."

Thus, the magistrate ruled that petitioner could only obtain his records through a confidential intermediary. In doing so, the magistrate construed the statute to contain two separate provisions limiting access to adoption information: the provision dealing with anonymity, which did not apply to petitioner; and the provision dealing with access to adoption records, which did. In the case of the latter provision, the magistrate saw no distinction between pre–1967 adoptions and post–1967, pre–1999 adoptions. We conclude that interpretation was erroneous.

We reach this conclusion for three reasons. First, the statutory scheme treats persons differently, depending upon the date of their adoption. That the language of the statute controls access to information according to adoption dates makes sense in light of the long history of amendments to Colorado law dealing with access to adoption records and the identity of parties to adoptions.

Prior to 1949, adoption was regulated by a statutory scheme which contained no provisions regarding access to adoption records. *See, e.g.,* Chapter 4, § 21 & Chapter 33, § 31, C.R.S.1935. In the years before 1949, children could be adopted by an adoptive parent through an application made to the juvenile court or to a board of county commissioners. A child could also be adopted from the state home for children as indentured apprentices through application made to the state home for children, a municipality, a board of county commissioners, or, if present, a juvenile court. A superintendent or an agent of the state home was charged with inspecting the placement of an adopted child to make sure that, for example, an indentured contract was being properly fulfilled and that the home in which the child was placed was not engaged in liquor sales or some pursuit of "ill fame." *Id.* Nothing in the pre–1949 statutes addresses any need to seal adoption records. Instead, the statutory scheme dealt with placement and the welfare of children once they had been placed.

In 1949 Chapter 33, § 31 was repealed and the General Assembly passed a new law which provided that records of adoption "shall be sealed and opened to inspection only upon order of the court for good cause."

1949 Colo. Sess. Laws 211 (§ 15) (codified at § 4–1–15). Nothing in section 4–1–15 specified that its provisions were retroactive.

Another significant change occurred in 1951 when the General Assembly modified section 4–1–15 to provide that records of adoption "shall be confidential records of the court and *not open to public inspection* unless by order of the court." 1951 Colo. Sess. Laws 154 (§ 15) (emphasis added). Between 1951 and 1967, records and papers in adoption cases were not open to public inspection unless the court ordered such inspection, but there was no explicit bar to access by the parties to the adoption. § 4–1–15(1), C.R.S. 1963. Whereas records were not open to inspection under the 1949 amendment, the 1951 amendment expressly stated that adoption records were not open to *public* inspection.

In 1967, there was another significant change to the law. The General Assembly repealed section 4–1–15(1) and enacted section 22–4–4, which made all records and papers in adoption cases "confidential and open to inspection only upon order of the court for good cause." Thus, the law was amended to adopt the same language in effect during the three-year period prior to 1951. Gone was the qualifying phrase, "not open to public inspection." In addition, that section added the requirement that courts "preserve the anonymity of the natural parents, child and adoptive parents." 1967 Colo. Sess. Laws 1018(§ 1), 1054 (§ 16), 1055(§ 2). Based upon these amendments, it is apparent that the General Assembly intended to change the law by making the biological parents anonymous not only to the public but to all persons, including adoptees. It does not require a leap of logic, in our view, to conclude that courts could not assure the anonymity of parties to the adoption without also sealing records of adoption and making them accessible only by order of the court.

The first authorization of access to records by a confidential intermediary occurred in 1987 when the General Assembly enacted section 19–1–104, C.R.S.1973 (1987 Supp.). At that time, the General Assembly recognized that "adult adoptees, adoptive parents, and biological siblings should have a qualified right of access to any records regarding … adoption … and that such qualified right must coexist with the right of such parties to privacy and confidentiality." § 19–5–301, C.R.S.1973 (1989 Supp.). Nothing in these amendments specified that they should be applied retroactively.

Therefore, the history and evolution of Colorado adoption laws compel us to conclude that during the period from 1951 to 1967, records of adoptions were not available to the public without a court order, but were available to the parties involved in the adoption process, now referred to as the "adoption triad." *See* § 19–5–305(1).

Second, the legislative declaration to section 19–5–305 confirms our interpretation of the change to Colorado law made in 1967, although, in writing its declaration, the General Assembly obviously missed its own 1951 amendment. That declaration states in relevant part:

The general assembly finds that on May 20, 1949, [sic] the general assembly amended the Colorado law to provide that all adoption records in existence on that date and those records that came into existence after that date were to be sealed and thereby maintained confidential from the public. Thereafter, in 1967, the general assembly acted to preserve the anonymity of the birth parents, the child, and the adoptive parents in adoption actions. However, as a result of these changes, many adoptees were unable to make informed medical decisions, determine genetic consequences of certain medical and reproductive decisions, and enjoy the benefits relating to knowledge about one's family history. In 1989, the general assembly enacted a process by which parties to an adoption could attempt contact with one another through a confidential intermediary. Thereafter, in 1999, the general assembly enacted legislation that allowed for limited access to certain adoption records by persons involved in the adoption.

§ 19–5–305(1).

Records became confidential as to the public in 1951—not 1949. Based upon the history and the change in 1951, which added

"from the public" as a modifier of "confidential," we conclude that the General Assembly intended that adoptions finalized after 1951 but before July 1, 1967, would be treated differently than those adoptions finalized after July 1, 1967. And this legislative history confirms to us that the concept of "anonymity" of the parties to an adoption necessarily depends upon the sealing of court records to make them accessible only through a specific process. Otherwise, we would have the absurd result that an adoptee could determine the names of his or her birth parents, but could not see the written record of those names.

It is obvious that the birth parents and other parties to the adoption triad were not anonymous prior to the 1967 change, since the General Assembly acknowledges that such change sought to restore the anonymity of the birth parents, the child, and the adoptive parents. In doing so, it also changed the pre-existing law by making records open to inspection only upon order of a court upon a showing of good cause, and charging courts with the responsibility of preserving the anonymity of the parties to the adoption. Such preservation is impossible in the case of pre–1967 adoptions, because the General Assembly has also excepted birth parents in such cases from anonymity.

Third, we are persuaded by the language of an exception contained in the current statute. Section 19–5–305(2)(a)(I)(A) makes adoption records of pre–1999 adoptions confidential, but treats the names of the parties differently, by providing that "the names of the parties thereto and the name of the adoptee shall remain anonymous *if* the adoption was finalized on or after July 1967." (Emphasis added.) We are hard pressed to imagine a situation where the parties to a pre-July 1967 adoption would not be anonymous, and therefore their names would be freely available to the adoptee, but the records would be available to the adoptee only with a court order upon a showing of good cause.

We acknowledge the absence of any qualifying language dealing with adoptions that occurred prior to 1951. However, it makes little sense for the General Assembly to provide an exception for adoptions which occurred prior to July 1, 1967, if what it intended to do was to specify that all adoptions prior to that date were sealed and confidential from the adoption triad. Based upon the error in the current statute's legislative declaration, it is understandable that the language of exception does not mention post–1949, pre–1951 adoptions.

Accordingly, we resolve the ambiguity in the statute in favor of petitioner. We conclude that the General Assembly must have correlated the names of the parties to an adoption with the records of the adoption and, therefore, for adoptions finalized prior to July 1, 1967, but after July 1, 1951, an adoptee may have access to the names of his or her birth parents and to all court records and papers regarding the adoption.

We therefore reverse the order which required petitioner to use a confidential intermediary process to gain access to adoption records. The trial court is directed to issue an order allowing petitioner access to those records.

The order is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge BERNARD and Judge BOORAS concur.