### The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

### Isaac Leroy GALLEGOS, Defendant–Appellant.

### No. 07CA0125.

Colorado Court of Appeals, Div. I.

March 4, 2010.

As Modified on Denial of Rehearing May 13, 2010.

Certiorari Dismissed July 15, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

# 20

John W. Suthers, Attorney General, Wendy Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Firm of Richard A. Hostetler, Richard A. Hostetler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Isaac Leroy Gallegos, appeals the judgment of conviction entered on jury verdicts finding him guilty of embezzlement and criminal extortion. We conclude that the indictment was legally sufficient on the embezzlement charge and affirm that conviction. We also conclude that the indictment was legally insufficient on the criminal extortion charge and we vacate the judgment pertaining to that charge.

## I. Background

In February 2005, Gallegos was indicted for embezzlement of public property, criminal extortion, and intimidation of a witness while he served as the Sheriff of Conejos County. The charges stemmed from Gallegos's use of inmates at the Conejos County Jail for construction work on an addition to his home and cutting firewood for his personal business.

Count one of the indictment alleged in relevant part that from 2000 to 2002 Gallegos used jail inmates to build an addition to his home without compensation; from 1998 to 2003 he had the inmates cut firewood, sold the wood, and kept the money; and during this period he used county vehicles and personnel to transport the inmates to perform

this work. Count two of the indictment alleged Gallegos made a substantial threat to confine or restrain a jail inmate. The witness intimidation charge was dropped prior to trial.

In July and August 2005, the district attorney filed a bill of particulars and a supplement to the bill of particulars, alleging Gallegos obtained a substantial financial benefit as a result of utilizing inmate labor, the inmates were not paid for their labor, and the county was not reimbursed for the income generated by the inmates. The People also alleged that Gallegos threatened to "ship off" inmates to another jail if they refused to perform work for him, in addition to other allegations not relevant here.

A jury found Gallegos guilty of embezzlement of public property and criminal extortion and the trial court sentenced him to two years of community corrections on each count, to be served concurrently. The jury returned separate verdict forms on the embezzlement count, one involving the work on Gallegos's home and the other involving the cutting of firewood. This appeal followed.

## II. Motion to Dismiss Indictment

Gallegos contends the trial court erred in denying his motion to dismiss the indictment on the ground it did not properly allege the commission of either embezzlement or extortion. We disagree as to the embezzlement charge, but agree as to the extortion charge.

The sufficiency of an indictment is reviewed de novo. *See People v. Melillo*, 25 P.3d 769, 777 (Colo.2001). A substantive defect in an indictment may be raised at any time because it is jurisdictional in nature. *People v. Russell*, 36 P.3d 92, 95 (Colo.App. 2001).

A criminal indictment must answer the questions of "who, what, where, and when." *People v. Tucker*, 631 P.2d 162, 164 (Colo. 1981). In *Tucker*, the supreme court held that embezzlement may be committed in numerous ways and that an indictment that does not adequately address how an embezzlement was accomplished with sufficient factual particularity is fundamentally unfair. *Id.* The court also concluded that a bill of particulars cannot save an insufficient indictment. *Id.*

> One purpose of a bill of particulars is to enable the defendant to prepare his defense in cases in which the indictment, although sufficient to advise him of the nature of the charges, is so indefinite in its statement that it does not afford him a fair opportunity to procure witnesses or to prepare for trial.

*People v. Quintano*, 81 P.3d 1093, 1096 (Colo. App.2003), *aff'd*, 105 P.3d 585 (Colo.2005). By specifically identifying the act or omission upon which a charge is based, a bill of particulars protects the defendant from being prosecuted twice for the same offense. *Id.*

Where a statute defines an offense in general terms, the indictment must allege the acts and conduct of the defendant which are deemed to have violated the statute. *People v. Buckallew*, 848 P.2d 904, 909 (Colo. 1993). The indictment must define the acts which constitute the crime with sufficient definiteness so that the defendant may plead resolution of the indictment as a bar to subsequent prosecution. *Id.; see also* Crim. P. 7(a)(2) ("Every indictment of the grand jury shall state the crime charged and essential facts which constitute the offense."). The ultimate test of the sufficiency of an indictment is whether it provides the defendant with sufficient notice of the charged offenses and facts to allow adequate trial preparation and protect the defendant from subsequent prosecution for the same offense. *People v. Palmer*, 87 P.3d 137, 139 (Colo.App.2003). It is not necessary to allege every element that must be proven at trial. *People v. Richardson*, 58 P.3d 1039, 1044 (Colo.App.2002). However, a court lacks jurisdiction over a defendant if the indictment fails to charge an essential element of an offense. *People v. Thomas*, 832 P.2d 990, 992 (Colo.App.1991).

### A. Sufficiency of Embezzlement Charge

First, Gallegos contends the indictment did not sufficiently address the "public moneys or public property" element of the embezzlement charge because it did not specify what was embezzled or how the embezzlement occurred. Gallegos concedes that he engaged in wrongdoing, but suggests the appropriate

charge should have been for the crime of first degree official misconduct, a class two misdemeanor, § 18–8–404, C.R.S.2009. Whether Gallegos should have been charged with this offense or any other is not within our province to address. In any event, we reject his argument that the embezzlement charge here was insufficient.

The crime of public property embezzlement occurs when a "public servant who lawfully or unlawfully comes into possession of any public moneys or public property ... knowingly converts any of such public moneys or property to his own use or to any use other than the public use authorized by law." § 18–8–407(1), C.R.S.2009.

The indictment alleged four facts to satisfy the public moneys or public property element of the embezzlement offense: (1) Gallegos used the manual labor of inmates to construct the addition to his home and to cut firewood; (2) Gallegos sold the firewood and kept the money for his personal use; (3) Gallegos benefitted from the inmate labor by a large increase in the value of his home; and (4) Gallegos used county vehicles and personnel to transport the inmates for this work.

Gallegos contends that none of the facts alleged in the indictment satisfies the public moneys or public property element of embezzlement. The People contend all four allegations do so. We agree with Gallegos that the first, second, and third facts alleged are not sufficient to satisfy the public moneys or public property element of the embezzlement charge. However, we conclude that the fourth factual allegation properly describes embezzlement.

■ Statutory interpretation is a question of law we review de novo. *People v. Jaramillo*, 183 P.3d 665, 671 (Colo.App.2008). In analyzing the language of a statute, we determine legislative intent by giving the words of the statute their plain and ordinary meaning. *In re J.N.H.*, 209 P.3d 1221, 1223 (Colo.App.2009). "When a statute does not define its terms but the words used are

terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meaning of those words." *People v. Daniels*, 240 P.3d 409, 411 (Colo.App. 2009).

■ The public property embezzlement statute does not define "public moneys or public property." *Black's Law Dictionary* defines "public property" as "state- or community-owned property not restricted to any one individual's use or possession." 1254 (8th ed. 2004). While ordinarily we would not look to the definition of a term in an unrelated statute, *see Bertrand v. Bd. of County Comm'rs*, 872 P.2d 223, 228 (Colo.1994), here there is no dictionary definition of the term "public moneys." Accordingly we look to other statutory and constitutional provisions for guidance. The General Assembly defined the term "public moneys" as "all moneys under the control of or in the custody of governmental units" in a statute dealing with financial institutions. § 11–47–103(12), C.R.S. 2009. The Colorado Constitution also refers to public money. In particular, article X, section 13 states that a public officer commits a felony involving public money when he or she directly or indirectly makes a profit "out of state, county, city, town or school district money." Colo. Const. art. X, § 13. We will employ these definitions of "public property" and "public moneys" when interpreting these terms in the embezzlement statute.

■ We next analyze whether the four factual allegations in the indictment satisfy the public moneys or public property element of the embezzlement statute. First, we conclude that Gallegos's use of the manual labor of inmates to construct an addition to his home and cut firewood does not involve public moneys or public property because, contrary to the People's contention, the inmates are not public property.

■ We also reject the People's related contention that public moneys or public property was involved under the "work release theory."[1] Under that theory, the People

---

1. The work release statute provides in pertinent part: "The sheriff may endeavor to secure employment for unemployed prisoners under this section. If a prisoner is employed for wages or salary, the sheriff may collect the same or require the prisoner to turn over his or her wages or salary in full when received, and the sheriff shall deposit the same in a trust checking ac-

contend that the inmates on work release were required to pay the county for their costs for board under the work release statute, § 18–1.3–106(4), C.R.S.2009. However, this statute only requires the sheriff to charge the account of an inmate on work release for board if the inmate has such an account. Such accounts are not required, and thus, the sheriff did not take any public moneys or property under the "work release theory."

▪ Second, Gallegos's profit from the sale of firewood did not involve public moneys or public property because the wood never belonged to the county.

▪ Third, although Gallegos benefitted from an increase in the value of his home as a result of the inmate labor, this increase did not involve coming into possession of public moneys or public property because the inmates are not public property, their labor is not public property, and the increased value was to Gallegos's private property, not to public property.

▪ However, we conclude that Gallegos's use of county vehicles and personnel to transport the inmates for work on his home and cutting firewood involves public moneys or public property because the vehicles were owned by the county and the personnel were county employees.

Therefore, we determine that the allegation of Gallegos's use of county vehicles and personnel to transport inmates was the only basis to satisfy the public moneys or public property element of the embezzlement charge in the indictment.

▪ Finally, we consider whether an indictment that sets forth multiple factual allegations is legally sufficient if only one factual allegation supports the charge.

The Supreme Court held in *Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), that jury instructions that provide a legally inadequate basis of liability violate due process, while instructions that provide a factually inadequate basis of liability do not violate due process. Alternative theories presented to a jury need not be proved beyond a reasonable doubt as long as there is sufficient evidence to support conviction on one of the theories. *People v. Dunaway*, 88 P.3d 619, 631 (Colo.2004) (upholding conviction where only one alternative theory of liability for a child abuse charge was supported by the evidence beyond a reasonable doubt). In *Dunaway*, the supreme court held that "permitting [a jury] instruction on an alternative theory of liability for the same charged offense not supported by sufficient evidence does not rise to the level of a constitutional error where the conviction for that offense is otherwise supported by sufficient proof." *Id.*

Here, unlike in *Dunaway*, the jury instructions regarding Gallegos's embezzlement charge did not specify alternative theories of liability such as the work-release theory. Rather, the instructions addressed the public moneys or public property element of the embezzlement charge with a general statement, asking the jury whether defendant was a public servant who "lawfully or unlawfully came into possession of any public moneys or public property of any kind." This general jury instruction satisfies the *Dunaway* test because no specific or alternative theory was included in the jury instructions.

In *People v. Mantos*, 250 P.3d 586, 592 (Colo.App.2009), a division of this court reversed the defendant's conviction on a charge of sexual exploitation of a child submitted to the jury on a legally inadequate theory. The division determined that the trial court and the prosecutor had incorrectly explained two statutory terms, and that the evidence did not support a conviction for the offense on the other statutory grounds submitted to the jury. *Mantos* is distinguishable because there was no factual basis to support the legally sufficient bases for conviction. Here, in contrast, uncontested evidence of Gallegos's use of county personnel and vehicles provides a sufficient factual basis to support

---

count and shall keep a ledger showing the status of the account of each prisoner." § 18–1.3–106(3), C.R.S.2009. The statute also provides that collected wages or salaries of employed pris-

oners shall be disbursed by the sheriff for specified purposes, including "[p]ayment of the board of the prisoner." § 18–1.3–106(5)(j), C.R.S.2009.

his embezzlement conviction, even though the other factual theories argued by the prosecution are insufficient.

Based on this analysis, we conclude that an indictment that sets forth multiple factual allegations, only some of which properly constitute a factual predicate for an embezzlement charge, is legally sufficient when it accurately recites the law and provides at least one factual basis to support the charge. We further conclude that the purpose of the indictment was met because Gallegos was given sufficient notice of the charged offenses and the facts to allow adequate trial preparation and protect himself from subsequent prosecution for the same offense. *See Palmer*, 87 P.3d at 139. Thus, we conclude the indictment on the embezzlement charge was legally sufficient.

However, even if we concluded that it was error to allow the jury to consider three factually insufficient bases on the embezzlement charge, we would conclude the error was harmless beyond a reasonable doubt because a legally sufficient and undisputed factual basis supported Gallegos's conviction. *See People v. Clark*, 214 P.3d 531, 540 (Colo.App.2009) ("When errors are of constitutional dimension, reversal is required unless the error was harmless beyond a reasonable doubt.").

### B. Sufficiency of Criminal Extortion Charge

Gallegos also contends the indictment did not adequately allege a violation of the threat to confine or restrain element of the criminal extortion charge. We agree.

As relevant here, a person commits criminal extortion when, "[t]he person, without legal authority and with the intent to induce another person against that other person's will to perform an act or to refrain from performing a lawful act makes a substantial threat to confine or restrain ... the threatened person or another person"[2] and threatens to cause the results by "[p]erforming or causing an unlawful act to be performed" or

"[i]nvoking action by a third party, including but not limited to, the state or any of its political subdivisions, whose interests are not substantially related to the interests pursued by the person making the threat." § 18–3–207(1), C.R.S.2009.

Count two of the indictment alleged that Gallegos "unlawfully, feloniously, and with the intent to induce [T.S.] against his will to perform an act or to refrain from performing a lawful act, made a substantial threat to confine or restrain [T.S.]." In the bill of particulars, the People further alleged that Gallegos, after learning that inmate T.S. was skilled in construction, gave T.S. the option of working on Gallegos's home or being "shipped off to another jail, away from his family." The bill of particulars also alleged it was Gallegos's practice to farm out to other jails inmates who refused to work for him or did not possess construction skills.

Gallegos contends that the indictment was insufficient because it did not identify the act upon which the threat to confine or restrain element of the criminal extortion charge was based. We disagree because the indictment sufficiently identified the act upon which the charge was based. Further, any uncertainty in this regard was eliminated by the bill of particulars, which stated that Gallegos threatened to transfer T.S. to another jail away from his family if he refused to perform construction work on Gallegos's home. This sufficiently identified an act upon which the extortion charge was based, gave Gallegos adequate notice to prepare a defense, and protected him from being prosecuted twice for the same offense. *See Quintano*, 81 P.3d at 1096.

However, we agree with Gallegos that the indictment was legally insufficient because it did not allege that Gallegos made a substantial threat to confine or restrain T.S. Instead, the indictment (and the bill of particulars) only alleged that Gallegos threatened to transfer T.S. to another jail if he did not agree to work on Gallegos's home. Because T.S. was already confined as an in-

---

**2.** Extortion also occurs when a person makes a substantial threat to "cause economic hardship or bodily injury to, or damage the property or reputation of, the threatened person or another person," § 18–3–207(1)(a); however, these alternatives are not at issue here.

mate, this allegation was legally insufficient to show any threat to restrain or confine T.S. Although the People argue on appeal that the threat to restrain or confine element was satisfied by trial testimony that Gallegos threatened to deny T.S. good time if he did not work for the sheriff, this allegation was not contained in the indictment, the bill of particulars, or the amended bill of particulars.

■ In *Tucker*, the supreme court reversed convictions and dismissed counts of an indictment that did not sufficiently describe the factual circumstances relied upon in bringing the charge when there were numerous ways in which the crime could have been committed. 631 P.2d at 164. An indictment must be dismissed when the record is insufficient to support the charges in the indictment. *People v. Laughlin*, 621 P.2d 1388, 1388 (Colo.1981) (dismissing indictment as insufficient where grand jury finding of probable cause was not supported by the record); *Tucker*, 631 P.2d at 164 (dismissing counts of the indictment unsupported by necessary factual circumstances); 4 Wayne R. LaFave et al., *Criminal Procedure* § 15.5(c) (3d ed.2007) (stating that most successful sufficiency of the indictment challenges "arise from the prosecution's failure to offer any evidence on a particular element of the crime charged"). Here, as in *Tucker* and *Laughlin*, the indictment was insufficient because it did not allege a necessary factual element of the crime charged. The averment that Gallegos threatened to transfer T.S. to another jail if he did not agree to work on Gallegos's home was insufficient to allege a substantial threat to restrain or confine T.S.

Thus, even if we assume evidence of the threatened loss of good time would otherwise have been sufficient to establish a violation of the extortion statute, it cannot cure the absence of such a factual allegation in the indictment or bill of particulars. Accordingly, we must dismiss the indictment on this charge.

### III. Sufficiency of the Evidence

■ Gallegos contends that the evidence was insufficient to sustain his conviction for embezzlement of public moneys or public property. We disagree.

■ When the sufficiency of the evidence is challenged on appeal, the court must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. Buckner*, 228 P.3d 245, 251 (Colo.App.2009) (quoting *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005)).

Gallegos argues the People failed to present evidence sufficient to support his conviction for embezzlement because they failed to establish that he possessed public moneys or public property which he converted to his own use.

We concluded above that the public moneys or property element was satisfied in the indictment by the allegation that Gallegos used county vehicles and personnel to transport the inmates to perform work for Gallegos's benefit. In addition, evidence in the record establishing this allegation, when viewed in the light most favorable to the prosecution, supports a finding of guilt beyond a reasonable doubt on the embezzlement charge. Further, we conclude this evidentiary showing was sufficient even though the other alleged factual circumstances in the indictment could not establish embezzlement, as discussed above.

### IV. Impermissible Variance

Gallegos next argues that the trial court erred in permitting evidence regarding the work release theory because that theory was not presented in the indictment and constituted an impermissible variance between the allegations and the proof. We disagree.

■ A variance occurs when the charge contained in an indictment differs from the charge of which the defendant is convicted. *People v. Rice*, 198 P.3d 1241, 1245 (Colo. App.2008). There are two types of variances, a simple variance and a constructive amendment. *Id.* A simple variance between the charge in the indictment and the jury instructions does not constitute reversible error unless a defendant's substantial rights

are prejudiced. *People v. Pahl,* 169 P.3d 169, 178 (Colo.App.2006). Convictions involving a simple variance are generally sustained as long as the evidence on which they were based corresponds to an offense that was clearly set forth in the indictment. *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996).

A simple variance occurs when the charging terms are unchanged but the evidence "proves facts materially different from those alleged" in the indictment. *Id.* (quoting *United States v. Williamson,* 53 F.3d 1500, 1512 (10th Cir.1995)). In *Pahl,* a division of this court found a simple variance did not warrant reversal where the defendant did not argue he was unaware of essential facts in connection with the charges against him, that he would have challenged the prosecution's case differently, or that he would have produced different evidence in his defense. 169 P.3d at 178. The *Pahl* division also noted that the defendant did not request the prosecution file a bill of particulars to clarify the indictment and concluded that the defendant's substantial rights were not prejudiced under the circumstances. *Id.*

In contrast, a constructive amendment between the indictment and the charge of which a defendant is convicted is reversible per se because it subjects a defendant to the risk of conviction for an offense not originally charged in the indictment. *People in Interest of H.W.,* 226 P.3d 1134, 1137 (Colo.App.2009). A variance that broadens an indictment is a constructive amendment. *People v. Foster,* 971 P.2d 1082, 1087 (Colo.App.1998). Such an amendment occurs when an essential element of the charged offense is changed, altering the substance of the indictment. *Id.*

We reject Gallegos's argument that the People's introduction of the work release theory constituted a constructive amendment of the indictment because there was no change in an essential element of the embezzlement offense between the indictment and the jury instructions.

We also conclude that a simple variance did not occur because the evidence did not prove facts materially different from those alleged in the indictment. In particu-lar, the evidence proved the public moneys or public property element beyond a reasonable doubt through Gallegos's use of county vehicles and personnel to transport inmates to perform work for his benefit. Even if we concluded that a simple variance existed, we would sustain Gallegos's conviction because the evidence upon which his conviction was based corresponds to at least some of the embezzlement offense allegations set forth in the indictment.

Accordingly, the People's introduction of an alternative argument at trial, the work release theory, did not constitute a constructive amendment or even a simple variance between the terms of the embezzlement charge in the indictment and the facts proven by the evidence presented at trial.

## V. Jury Instructions

Gallegos next contends that the trial court committed reversible error in the embezzlement elements instruction and in instructing the jury regarding the work release theory. We disagree.

Absent plain error, a failure to object to jury instructions before they are submitted to the jury precludes judicial review. *People v. Weller,* 679 P.2d 1077 (Colo. 1984). A timely objection allows the court to correct errors that can easily be corrected. *Harris Group, Inc. v. Robinson,* 209 P.3d 1188 (Colo.App.2009). A trial court has discretion to determine the form and style of jury instructions, and we will overturn its decision only if that discretion is abused. *Id.* If a jury would have decided the case differently had a correct instruction been given, then the error is reversible. *Id.* at 1195. Where an objection is properly preserved, we review the jury instruction for harmless error. *Waneka v. Clyncke,* 134 P.3d 492, 494 (Colo.App.2005), *aff'd,* 157 P.3d 1072 (Colo. 2007). Such an error is harmless unless it affects the substantial rights of the parties. *Id.* "Instructions which accurately track the language of the statute and pattern instructions are generally sufficient." *People v. Riley,* 240 P.3d 334, 341 (Colo.App.2009).

Gallegos argues that Jury Instruction No. 10 was erroneous because it includ-

ed a general reference to "public property of any kind" without instructing the jury what public monies or public property served as the basis of the indictment. Because Gallegos did not object to this instruction at trial, we review it for plain error. Jury Instruction No. 10 stated the relevant element as "lawfully or unlawfully came into possession of any public moneys or public property of any kind," which precisely tracks the pattern jury instruction language. CJI–Crim. 28:07 (1993). The applicable statutory language is similar, "lawfully or unlawfully comes into possession of any public moneys or public property of whatever description." § 18–8–407(1). Here, the jury instruction regarding the embezzlement elements tracked the applicable statutory language and pattern jury instructions, and thus we conclude it was not error, much less plain error.

In addition, Gallegos argues that Jury Instruction No. 9, which was given over his objection, erroneously instructed the jury on the statutory basis of the work release theory and improperly suggested it was a basis for the embezzlement charge. We disagree.

Undisputed evidence established that Gallegos used county vehicles and county personnel for his personal benefit, which we concluded was sufficient to sustain the embezzlement verdict. Further, Gallegos did not request special interrogatories on the jury verdict form that could have established which facts led to the jury's conclusion that the public moneys or public property element of embezzlement was satisfied. Therefore, we have no basis to conclude that the jury improperly relied on the work release theory in determining Gallegos was guilty of embezzlement.

In *Dunaway*, the supreme court held that "jurors should be trusted to follow the court's instructions to find the defendant guilty only if the prosecution proved each of the elements of the charged crime beyond a reasonable doubt" and "federal due process does not require reversal of a conviction on the basis of the very remote possibility that one of the alternatives in the instruction may have misled the jury into handing down an erroneous conviction." 88 P.3d at 629.

While the prosecution retains the burden of proving each element of the offense beyond a reasonable doubt, "due process is not offended if one of the alternative bases of liability contained within an element is not also supported by sufficient evidence." *Id.*

Here, the alternative basis of liability, the work release theory, was not supported by sufficient evidence to prove beyond a reasonable doubt the public moneys or public property element of embezzlement. However, because the evidence regarding Gallegos's use of county vehicles and county personnel established the public moneys or public property element beyond a reasonable doubt, we conclude that the inclusion of the jury instruction on the work release theory did not constitute reversible error. Further, we note that the work release theory was included in a jury instruction separate from the jury instruction pertaining to the elements of the crime of embezzlement, and the embezzlement elements instruction did not direct the jury to consider the work release theory.

## VI. Prosecutorial Misconduct

Gallegos contends the prosecutor's closing argument was improper because the prosecutor argued the work release theory and the good time theory and the prosecutor's rebuttal closing argument was improper because the prosecutor asked the jury to send a message to the community. We perceive no reversible error.

The scope of closing arguments is within the sound discretion of the district court, and we will not disturb its rulings pertaining thereto in the absence of a showing of gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Moody*, 676 P.2d 691, 697 (Colo.1984); *People v. Suazo*, 87 P.3d 124, 128 (Colo.App.2003). We evaluate a claim of improper closing argument in light of the entire record of the trial. *People v. Munsey*, 232 P.3d 113, —— (Colo.App.2009).

Where, as here, a defendant did not object at trial, we review whether an error requires reversal under the plain error standard. "To constitute plain error, prose-

cutorial misconduct must be 'flagrant or glaringly or tremendously improper,' and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Tillery*, 231 P.3d 36, 44 (Colo.App.2009) (quoting *People v. Salyer*, 80 P.3d 831, 839 (Colo.App.2003)). Prosecutorial misconduct in closing argument rarely constitutes plain error. *Id.* Prosecutorial misconduct constitutes plain error only when there is a substantial likelihood that it affected the verdict or that it deprived the defendant of a fair and impartial trial. *People v. Sommers*, 200 P.3d 1089, 1096 (Colo.App.2008). Defense counsel's failure to object is a factor that may be considered in examining the impact of a prosecutor's argument and may "demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Rodriguez*, 794 P.2d 965, 972 (Colo.1990).

■ Gallegos first argues that the People's introduction of the work release theory and the good time theory in the closing argument constituted prosecutorial misconduct. We need not address the argument pertaining to the good time theory because we have vacated Gallegos's extortion conviction. We disagree that statements pertaining to the work release theory constituted prosecutorial misconduct.

The mention of additional theories during the People's closing argument is not an error so flagrant, glaring, or tremendously improper as to undermine the fairness of the trial. Gallegos cited no authority, and our research has yielded none, that supports a finding of prosecutorial misconduct on the basis of a legal theory presented to the jury. Usually, alleged prosecutorial misconduct involves statements concerning the evidence presented at trial or personal opinions espoused by the prosecutor. *See, e.g., People v. Geisendorfer*, 991 P.2d 308, 313 (Colo.App.1999) (stating trial court is in the best position to evaluate claims of improper argument and holding trial court did not err in denying a mistrial where prosecutor's erroneous statement regarding jury instructions was a small portion of the argument and was unlikely to influence the verdict). We also conclude that there was no substantial likelihood that statements about the work release theory affected the verdict on the embezzlement charge because there was undisputed evidence presented at trial to support the jury's finding of guilt on the basis that Gallegos used county personnel and vehicles to transport inmates to work on his home and to cut firewood.

In addition, we conclude that the prosecutor's statement asking the jury to send a message to the community was improper, but did not constitute plain error.

■ A prosecutor's statement asking a jury to "send a message to the community" is improper in the guilt phase of a trial. *Cf. People v. Davis*, 794 P.2d 159, 200 (Colo. 1990) (holding such a statement was not improper during the sentencing phase of a trial). We agree with Gallegos that the prosecutor's statement during closing argument asking the jury to send a message to the community was improper. However, we conclude that such a statement was not flagrantly improper so as to constitute plain error. Not only did defense counsel fail to object to the statement during trial, but the statement was a small part of the People's closing argument. *See Tillery*, 231 P.3d at 45 (holding that prosecutor's improper statement during closing argument that defendant had lied was not plain error where comments constituted a small part of the closing argument and there was overwhelming evidence of defendant's guilt). We also conclude the statement was unlikely to affect the verdict where substantial evidence supported Gallegos's embezzlement conviction on the basis that he used county vehicles and county personnel for his personal gain.

Accordingly, we hold that the prosecutor's statements during closing argument did not constitute plain error.

## VII. Cumulative Error

Finally, Gallegos alleges his conviction should be reversed due to cumulative error. We disagree.

■ We will reverse for cumulative error where, although numerous individual allegations of error may be deemed harmless and not require reversal, in the aggregate

those errors show prejudice to the defendant's substantial rights and, thus, the absence of a fair trial. *Williams v. People,* 724 P.2d 1279, 1286 (Colo.1986). To reverse, we must find "that numerous errors have actually occurred, not merely [been] alleged." *People v. Clark,* 214 P.3d 531, 543 (Colo.App. 2009) (*cert. granted* Aug. 17, 2009). Merely showing that there were numerous rulings that adversely affected a party is insufficient to warrant reversal if those rulings were not erroneous. *Id.*

We have vacated the extortion conviction, but we have not found numerous errors regarding the embezzlement conviction. Thus, there was no cumulative error.

## VIII. Denial of Petition for Rehearing

We deny Gallegos's petition for rehearing, and write separately to explain our reasons for doing so.

In his petition for rehearing, Gallegos contends that the People did not rely on his use of county vehicles and personnel to support the embezzlement charge at trial. Thus, Gallegos contends, that particular factual allegation was insufficient to sustain his conviction. However, one of Gallegos's main arguments on appeal, discussed in Part II, was that the indictment was insufficient to support the embezzlement charge brought against him. In rejecting this contention, we held that one of the factual bases alleged in the indictment was sufficient to support the embezzlement charge. Gallegos's argument in his petition for rehearing does not affect our analysis of this argument based on the allegations in the indictment.

Gallegos also contends in his petition for rehearing that the trial court erred in denying his motion for acquittal for lack of evidence, which we addressed above. However, Gallegos did not argue on appeal that the fourth factual basis—using county vehicles and personnel to transport inmates for his personnel use—was not relied upon at trial and was not mentioned in either of the two special verdict forms provided to the jury for the embezzlement charge. We will not address an argument raised for the first time in Gallegos's petition for rehearing.

*Kelly v. Cent. Bank & Trust Co.,* 794 P.2d 1037, 1044–45 (Colo.App.1989).

The judgment of conviction for embezzlement is affirmed, and the conviction for extortion is vacated.

Judge HAWTHORNE and Judge FURMAN concur.