Annette HERRERA, Plaintiff–Appellant,

v.

CITY AND COUNTY OF DENVER and Martin Jacinto, Defendants–Appellees.

No. 09CA0349.

Colorado Court of Appeals,
Div. I.

Nov. 12, 2009.

The Kaudy Law Firm, LLC, Richard M. Kaudy, Nicole A. Spezia, Denver, Colorado, for Plaintiff–Appellant.

David R. Fine, City Attorney, Jason A. Kramer, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

Plaintiff, Annette Herrera, appeals the trial court's judgment dismissing her complaint after the court determined a snowplow is not a "motor vehicle" under the Colorado Governmental Immunity Act (CGIA) and therefore sovereign immunity is not waived against defendants, the City and County of Denver and Martin Jacinto. We agree with Herrera's contentions and therefore reverse the trial court's judgment, vacate the order awarding fees, and remand for further proceedings.

## I. Background

In 2008, Herrera's vehicle was hit when Jacinto, the driver of a snow removal vehicle for the City and County of Denver, ran a red light at the intersection of Sheridan Boulevard and Morrison Road. Jacinto was operating the snow removal vehicle for the City and County of Denver. Herrera was driving properly at the time of the accident.

Herrera sued defendants, alleging the accident resulted in serious injuries, damages, and losses exceeding $100,000, as well as additional ongoing medical and therapy expenses.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction. Herrera submitted a police accident report that described the vehicle that struck her as a "dump truck," along with an affidavit supporting this description of the vehicle, stating it was a dump truck with a snowplow blade attached to the front. The police department said Jacinto's running the red light was the sole cause of the accident. Herrera requested an evidentiary hearing to determine the exact classification of the vehicle but the court did not rule on her motion.

The trial court granted defendants' motion to dismiss for lack of subject matter jurisdiction. The trial court awarded defendants attorney fees in the amount of $2,437.50.

Herrera appeals the trial court's dismissal and award of attorney fees to defendants.

## II. Standard of Review

Whether the trial court had subject matter jurisdiction for a claim under the CGIA is a question of statutory interpretation that we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000); *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1171 (Colo.2000).

## III. Subject Matter Jurisdiction

Herrera contends the trial court erred in ruling a snowplow does not fall within the statutory definition of "motor vehicle," as to which governmental immunity is waived under the CGIA. We agree.

When a public entity claims that it is immune from liability under the CGIA, the issue is to be determined by the trial court. *Kittinger v. City of Colorado Springs*, 872 P.2d 1265, 1267 (Colo.App.1993). Whether immunity has been waived under the CGIA is an issue of subject matter jurisdiction. *Estate of Grant v. State*, 181 P.3d 1202, 1204 (Colo.App.2008). The plaintiff has the burden to prove subject matter jurisdiction. *Id.*

The goal of statutory interpretation is to ascertain the General Assembly's intent. *Platt v. People*, 201 P.3d 545, 551 (Colo.2009). When interpreting a statute, a court should look first to the plain language of the statute.

*In re J.N.H.*, 209 P.3d 1221, 1222–23 (Colo. App.2009). If legislative intent is clear from the plain language of the statute, then other rules of statutory interpretation need not be applied. *Id.* at 1223.

### A. Purpose of the Governmental Immunity Act

The CGIA generally immunizes the government from tort liability to protect the public from unlimited liability and excessive financial burdens, but waives the government's immunity in certain circumstances "to allow the common law of negligence to operate against governmental entities." *Medina v. State*, 35 P.3d 443, 453 (Colo.2001) (quoting *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998)). One of the basic purposes of the CGIA is to allow a person to recover for personal injuries caused by a public entity. *Springer v. City & County of Denver*, 13 P.3d 794, 803 (Colo.2000) ("[T]he purpose of the CGIA is to allow Colorado's law of negligence to operate against governmental entities, except to the extent that it has barred suit against them."); *State v. Moldovan*, 842 P.2d 220, 222 (Colo.1992).

The state's immunity must be strictly construed because the act derogates the common law. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384–85 (Colo. 1997); *Lauck v. E-470 Pub. Highway Auth.*, 187 P.3d 1148, 1150 (Colo.App.2008). Waivers are construed broadly to effectuate their intended goals. *Springer*, 13 P.3d at 803; *see also Estate of Grant*, 181 P.3d at 1204–05 ("We broadly construe these provisions waiving immunity in the interest of compensating victims of governmental negligence, but construe the exceptions to these waivers strictly because the ultimate effect of the exceptions is to grant immunity.").

"[Section 24–10–106(1)(a), C.R.S. 2009, of the CGIA] provides that sovereign immunity is waived by a public entity in an action for injuries resulting from the operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." *Harris v. Reg'l Transp. Dist.*, 15 P.3d 782, 784 (Colo. App.2000). The General Assembly's intent in excluding the operation of motor vehicles

426

from governmental immunity was "to provide for compensation to persons injured by the negligent conduct of government employees." *Grabler v. Allen*, 109 P.3d 1047, 1051 (Colo. App.2005).

As discussed below, we conclude the language of section 24–10–106(1)(a), considered in the context of the statute as a whole, does not indicate that the General Assembly intended to immunize the government from negligent acts committed by the driver of a snowplow.

## B. Case Law Defining "Motor Vehicle"

■ Herrera contends that a snowplow is a motor vehicle under the CGIA and therefore governmental immunity has been waived. Based on a 2007 amendment to the CGIA, defendants contend a snowplow is not a motor vehicle under the statute and therefore the analysis in *Williams v. State Department of Highways*, 874 P.2d 465 (Colo.App. 1993) (*Williams I*), *vacated*, (Colo.1994), is apposite. We agree with Herrera that a snowplow is a motor vehicle under the CGIA.

The CGIA was amended in 2007 to define "motor vehicle." Section 24–10–103(2.7), C.R.S.2009, provides, " 'Motor vehicle' means a motor vehicle as defined in section 42–1–102, C.R.S., and a light rail car or engine owned or leased by a public entity." Section 42–1–102(58), C.R.S.2009, of the Uniform Motor Vehicle Law provides as relevant here, " 'Motor vehicle' means any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways...."

In addition to defining "motor vehicle," the Uniform Motor Vehicle Law includes a definition for "snowplow." Defendants contend the inclusion of a separate definition for "snowplow" in section 42–1–102(91), C.R.S. 2009, demonstrates the General Assembly's intent that a snowplow cannot be a motor vehicle. We disagree.

In the absence of a CGIA definition of "motor vehicle," Colorado's appellate courts addressed the issue several times before the CGIA was amended in 2007. In *Williams I*, a division of this court concluded that a snow-

plow was not a motor vehicle under the CGIA. 874 P.2d at 467. Because the CGIA did not define "motor vehicle" when *Williams I* was decided in 1993, the division relied on the definition of the term in section 42–1–102. *Id.* The General Assembly recognized in the Uniform Motor Vehicle Law that a vehicle could be redesigned from its original purpose, and the division therefore concluded that the "focus must be on the design and use of the vehicle at the time of the accident." *Id.* The division observed that on the day of the accident the vehicle at issue was hauling sand to deposit on road surfaces, but at the time of the accident it was being operated only as a snowplow, removing snow from the roadway. *Id.* The division reasoned the vehicle was not a motor vehicle under the CGIA because at the time of the accident the vehicle was not being used "primarily for the transportation of persons or cargo." *Id.* The division determined the vehicle's use as a snowplow at the time of the accident meant it was "mobile machinery" and not a "motor vehicle." *Id.* "Mobile machinery" is defined as vehicles "not designed primarily for the transportation of persons or cargo over the public highways," which include "wheeled vehicles commonly used in the construction, maintenance, and repair of roadways" that "may only incidentally operated or moved over the public highways." § 42–1–102(54), C.R.S.2009. Therefore, the division ruled the vehicle was not a motor vehicle subject to the waiver of governmental immunity. 874 P.2d at 467.

The following year, the supreme court decided in *Bertrand v. Board of County Commissioners*, 872 P.2d 223, 229 (Colo.1994), that for purposes of the CGIA "a 'motor vehicle' includes any vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways." Relying on a dictionary definition of "motor vehicle," the court rejected the applicability of the definitions in the Uniform Motor Vehicle Law. *Id.*

Following *Bertrand*, the supreme court vacated *Williams I* and remanded the case for reconsideration. A division of this court determined in *Williams v. State Department of Highways*, 879 P.2d 490, 491 (Colo.App.1994)

(*Williams II*), that a dump truck with an attached snowplow blade is a motor vehicle for which sovereign immunity is waived under the CGIA.

Herrera contends that the General Assembly's amendment to the CGIA following the *Bertrand* decision was only intended to address the court's exclusion of vehicles "running on rails or tracks" from the definition of "motor vehicle." As noted, the 2007 amendment to the CGIA provided that "motor vehicle" "means a motor vehicle as defined in section 42–1–102, C.R.S., and a light rail car or engine owned or leased by a public entity." § 24–10–103(2.7). We agree with Herrera that, in response to *Bertrand*, the General Assembly intended to expand the CGIA definition of "motor vehicle" to add vehicles running on rails or tracks, including light rail, and to legislatively overrule *Bertrand's* reliance on the dictionary definition of "motor vehicle" by reference to a statutory definition. However, we still disagree with defendants that the statutory changes created mutually exclusive definitions of "motor vehicle" and "snowplow."

In doing so, we necessarily disagree with the analysis in *Williams I*, and to the extent that it might apply, we decline to follow it for two reasons.

First, we disagree with the *Williams I* division's conclusion that what the vehicle was doing at the time of the accident is dispositive. Section 42–1–102(58) defines a motor vehicle as "any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways." Thus, the proper inquiry here is whether the snowplow, or dump truck with a snowplow blade attached, is a vehicle that is generally and commonly used to transport persons and property. If so, the vehicle is a motor vehicle and governmental immunity is waived under section 24–10–106(1)(a), regardless of whether the vehicle was plowing snow or hauling sand when the accident occurred.

Second, although the *Williams I* division concluded that a vehicle could not be both a "snowplow" and a "motor vehicle," as discussed below, we conclude that a snowplow can be a motor vehicle.

### C. Statutorily Defined Terms' Exclusivity

Defendants contend the General Assembly intended to distinguish the terms "snowplow" and "motor vehicle" by expressly defining these terms separately in section 42–1–102(58) and (91) of the Uniform Motor Vehicle Law. We disagree with defendants that, following the 2007 amendment, a snowplow may not be a motor vehicle under the CGIA.

The term "motor vehicle" is defined in the statute as "any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways." § 42–1–102(58). Nothing in the statute provides that defined terms are mutually exclusive, and the statute includes examples of defined terms falling into multiple categories. For example, the term "automobile" is defined as "any motor vehicle." § 42–1–102(8), (58), C.R.S.2009. "Motorcycle" is a type of "motor vehicle" but is not a "farm tractor" or "low-power scooter." § 42–1–102(55), C.R.S.2009. In addition, the term "bicycle" is separately defined as well as specifically included in the definition of "vehicle." § 42–1–102(10), (112), C.R.S. 2009. The term "snowplow" is explicitly referred to as an "authorized service vehicle" in the statute, and the terms are also separately defined. *See* § 42–1–102(7), (91), C.R.S.2009; § 42–4–214, C.R.S.2009 (regarding the visual signals required on service vehicles, the statute provides "except that an *authorized service vehicle snowplow* operated by a general purpose government may also be equipped with and use no more than two flashing, oscillating, or rotating blue lights as warning lamps" (emphasis added) ). In addition, the term "snowplow" is defined as "any *vehicle* originally designed for highway snow and ice removal or control or subsequently adapted for such purposes." § 42–1–102(91) (emphasis added). Under the statute, a "vehicle" is "a device that is capable of moving itself, or of being moved, from place to place upon wheels or endless tracks," § 42–1–102(112), which can also be a "motor vehicle."

**428**

The inclusion of similar, overlapping terms indicates that terms defined in the statute are not mutually exclusive. The statute defines "authorized emergency vehicle," "authorized service vehicle," "motorcycle," "school bus," "snowplow," and "truck." § 42–1–102(6), (7), (55), (88), (91), (108), C.R.S. 2009. Clearly, each of these terms is also encompassed by the statutory definition of "vehicle." *See* § 42–1–102(112). In addition, some or all of these terms may fall under the statutory definition of "motor vehicle." *See* § 42–1–102(58).

### D. Evidentiary Hearing

■ Herrera contends the trial court erred in granting defendants' motion to dismiss without conducting an evidentiary hearing to determine whether it has subject matter jurisdiction. We disagree because defendants do not contend on appeal that there is a factual question whether the snowplow, or dump truck with snowplow blade attached, was a vehicle "generally and commonly used to transport persons and property over the public highways." Accordingly, the issue of whether the vehicle was a motor vehicle is a question of law and, therefore, an evidentiary hearing is unnecessary.

We thus reverse the trial court's judgment granting defendants' motion to dismiss. Because we reverse on the merits, we also vacate the order awarding attorney fees. *See Lambert v. Ritter Inaugural Comm., Inc.,* 218 P.3d 1115, 1117 (Colo.App.2009).

The judgment is reversed, the order is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge DAILEY and Judge BOORAS concur.