2012 COA 152

Susan A. HENDERSON,
Plaintiff–Appellee,

v.

CITY AND COUNTY OF DENVER,
Colorado, Defendant–Appellant.

No. 11CA2068.

Colorado Court of Appeals,
Div. VI.

Sept. 13, 2012.

Sisun & Scriven, P.C., Bradley A. Scriven, Denver, Colorado, for Plaintiff–Appellee.

Douglas J. Friednash, City Attorney, Wendy J. Shea, Assistant City Attorney, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

¶ 1 A street sweeper operated by an employee of defendant, the City and County of Denver, collided with a car driven by plaintiff, Susan A. Henderson. The driver sued the city. She alleged that the street sweeper was a "motor vehicle." Therefore, she argued, the city's immunity was waived under the Colorado Governmental Immunity Act (CGIA).

¶ 2 The city moved to dismiss the driver's claim, arguing that the street sweeper was "mobile machinery," rather than a "motor vehicle." The city contended that this difference meant that the city's immunity was not waived under the CGIA.

¶ 3 The trial court denied the motion. The city appeals. We reverse and remand for further proceedings.

## I.   Factual and Procedural Background

### A.   Complaint and Motion to Dismiss

¶ 4 The driver alleged that, in August 2009, a street sweeper owned and operated by the city backed up and struck her car, damaging it and injuring her. Her complaint raised claims based on negligence and respondeat superior.

¶ 5 Relying on C.R.C.P. 12(b)(1), the city moved to dismiss the driver's complaint, contending that, because of the CGIA, sections 24–10–101 to –120, C.R.S.2012, the trial court did not have subject matter jurisdiction over the case. Specifically, the city argued that the street sweeper was not a motor vehicle within the meaning of section 24–10–106(1)(a). This statute creates an exception to the general rule providing public entities with immunity in tort cases by waiving such immunity when a person's injuries are a result of the "operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." *Id.*

¶ 6 Opposing the city's motion, the driver requested a hearing at which she could develop facts to support her argument that the street sweeper was a motor vehicle. The city agreed that an evidentiary hearing could be held if the trial court thought that there was a factual dispute about the driver's argument. *See Herrera v. City & County of Denver*, 221 P.3d 423, 428 (Colo.App.2009) ("because defendants *do not contend* on appeal that there is a factual question whether the snowplow, or dump truck with snowplow blade attached, was a vehicle 'generally and commonly used to transport persons and property over the public highways,'" as "motor vehicle" is defined in § 42–1–102(58), C.R.S.2012, "the issue of whether the vehicle was a motor vehicle is a question of law and, therefore, an evidentiary hearing is unnecessary" (emphasis supplied)).

## B. Initial Decision and First Appeal

¶ 7 The trial court denied the city's motion without holding an evidentiary hearing. It concluded that the street sweeper was a motor vehicle, and, as a result, the city was not immune from the driver's suit. As part of this ruling, the court determined that the street sweeper was self-propelled by a gas or diesel engine. It was designed for use on the public highways, and it carried a city employee and other materials over those highways.

¶ 8 The city then filed the first interlocutory appeal in this case. A division of this court held that the trial court erred when it determined, as a matter of law, that a street sweeper was a motor vehicle for purposes of waiving the city's immunity under the CGIA. *See Henderson v. City & Cnty. of Denver,* (Colo.App. No. 10CA1005, 2011 WL 1854438, May 12, 2011) (not published pursuant to C.A.R. 35(f)). In reaching this conclusion, the division first noted that the term "street sweeper" is not defined by Colorado law. This lack of a definition required the division to turn to the record for a factual description of the street sweeper to determine whether that description satisfied the statutory definition of "motor vehicle." *See* § 42–1–102(58).

¶ 9 The only description of the street sweeper in the record appeared in an affidavit filed by the city. The division held that the information in the affidavit did not support a conclusion, as a matter of law, that the street sweeper was a motor vehicle. This was because the affidavit only stated that

- the street sweeper's sole purpose was to maintain the city's paved streets and alleyways by eliminating debris; and
- the street sweeper did not have a passenger compartment for carrying passengers or a cargo area for carrying cargo.

¶ 10 The division concluded that this limited record did not support the trial court's conclusion, and it reversed the trial court's decision. However, the division recognized that the driver had requested an evidentiary hearing to develop facts in support of her argument that the street sweeper was a motor vehicle, and that the city did not oppose this request. Therefore, the division re-manded the case to the trial court to allow the parties to conduct limited discovery, and then to conduct a *Trinity* hearing, which is named for our supreme court's decision in *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo. 1993).

## C. Evidence on Remand

¶ 11 The trial court held the *Trinity* hearing. The parties presented evidence about the street sweeper. This proof established the following facts.

¶ 12 The street sweeper is driven and operated by one person. It has two seats, two steering wheels, and two rocker pedals to allow for operation from either side. It is not designed or used to transport passengers.

¶ 13 The street sweeper is generally and commonly used on the city streets. It operates only on paved surfaces, including parking lots. It is only used to maintain the city's streets and alleyways by eliminating debris.

¶ 14 The operator drives the street sweeper on city streets to travel from the place where it is stored to the place where it will be used. Its maximum speed is only twenty miles per hour, and the operator turns on its flashing lights when it is moving. It has room for storage under the seats, which may hold a fire extinguisher and tools.

¶ 15 The street sweeper has a storage tank for water that is used in the sweeping process. It picks up debris from the streets. Other than water and debris, it does not transport cargo.

¶ 16 The street sweeper is equipped with a seat belt for the operator. It has a speedometer. It is heated and air conditioned. It has a license plate, but it is registered as "mobile machinery."

## D. Decision on Remand

¶ 17 After considering all the evidence, the trial court again concluded that the street sweeper was a motor vehicle for purposes of the CGIA. The court made the following findings about the street sweeper.

- Although it has no purpose other than cleaning streets, it is a self-propelled vehicle that is primarily designed for travel on the public highways.

- It has a space to carry property, including a tool box and a fire extinguisher. The city's policies require street sweepers to carry those items.

- It carries water and debris in the course of performing its function.

- Although it has only one occupant, it is generally and commonly used to transport a person and property over public streets and highways.

¶ 18 The court then concluded that the street sweeper

- "is a self-propelled vehicle that is designed primarily for travel on the public highways and ... is generally and commonly used to transport persons and property over the public highway"; and

- "meets the definition of a motor vehicle and that governmental immunity has been waived."

¶ 19 The trial court then denied the city's motion to dismiss. The city filed this second interlocutory appeal.

## II. Standard of Review

■■ ¶ 20 Whether the trial court has subject matter jurisdiction over a claim under the CGIA is a question of statutory interpretation. *Herrera*, 221 P.3d at 425. Our primary task when construing provisions of the CGIA, as with any statute, is to ascertain and give effect to the intent of the legislature. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo.2000). If legislative intent is clear from the plain language of the statute, then we need not employ other rules of statutory interpretation. *Herrera*, 221 P.3d at 425.

■■ ¶ 21 The question whether the trial court has subject matter jurisdiction is properly addressed by a C.R.C.P. 12(b)(1) motion to dismiss. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383–84 (Colo.1997). Under the CGIA, the plaintiff has the burden of establishing that the public entity is not immune and, thus, the trial court has juris-

diction over his or her tort claim. *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001). Where, as here, the jurisdictional facts that were presented in the *Trinity* hearing are undisputed, the issue is one of law, which we review de novo. *City & Cnty. of Denver v. Crandall*, 161 P.3d 627, 633 (Colo.2007).

## III. Legal Framework

### A. Applicable Statutes

¶ 22 We begin our analysis by examining the relevant statutes.

1. A public entity's immunity is waived in an action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." § 24–10–106(1)(a).

2. As pertinent here, for the purposes of the CGIA, a "motor vehicle," "means a motor vehicle as defined in section 42–1–102, C.R.S." § 24–10–103(2.7), C.R.S. 2012. The reference to section 42–1–102 was added in 2007. Before then, the CGIA did not define the term "motor vehicle." *Herrera*, 221 P.3d at 426 (discussing the General Assembly's amendment of the CGIA in 2007 to add the definition of "motor vehicle"). The 2007 amendment is important to our decision, and we discuss its effects in detail below.

3. Section 42–1–102(58) defines a "motor vehicle" as

   any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways or a low-speed electric vehicle; except that the term does not include low-power scooters, wheelchairs, or vehicles moved solely by human power.

4. At the time of the accident that gave rise to this case, "mobile machinery," or "self-propelled construction equipment," was defined as

   those vehicles, self-propelled or otherwise, which are not designed primarily for the transportation of persons or car-

go over the public highways, and those motor vehicles which may have originally been designed for the transportation of persons or cargo over the public highways but which have been redesigned or modified by the mounting thereon of special equipment or machinery, and which may be only incidentally operated or moved over the public highways. This definition includes but is not limited to wheeled vehicles commonly used in the construction, maintenance, and repair of roadways, the drilling of wells, and the digging of ditches.

*See* Ch. 337, sec. 1, § 42–1–102(54), 1994 Colo. Sess. Laws 2099–100 (emphasis added). (We note that, after the accident in this case occurred, the legislature replaced the definition of "mobile machinery" or "self-propelled construction equipment" with a definition of "special mobile machinery." It is much the same. *See* § 42–1–102 (93.5), C.R.S. 2012 (defining "special mobile machinery" as "machinery that is pulled, hauled, or driven over a highway" and is "a vehicle or equipment that is not designed primarily for the transportation of persons or cargo over the public highways" and "includes vehicles commonly used in the construction, maintenance, and repair of roadways").)

¶ 23 We next consider the relevant case law.

### B. Case Law

#### 1. Court of Appeals Cases Decided Before the 2007 Amendment

¶ 24 Before the legislature amended the CGIA in 2007 by defining the term "motor vehicle," divisions of this court turned to section 42–1–102 of the Uniform Motor Vehicle Act for definitions of the terms "motor vehicle" and "mobile machinery" in a trio of cases. After applying those definitions, each division held that the vehicle in question was not a "motor vehicle." Therefore, the public entity's sovereign immunity was not waived.

¶ 25 In *Bain v. Town of Avon*, 820 P.2d 1133, 1135 (Colo.App.1991), the division concluded that a backhoe did not fall within the definition of "motor vehicle." The division

noted that the evidence demonstrated that there was no place on the backhoe for transporting passengers, there was no cargo area, and the maximum speed at which the backhoe could be operated safely was fifteen miles per hour. *Id.* Based on these characteristics, the division concluded that the backhoe was more like "mobile machinery." *Id.*

¶ 26 In *Bertrand v. Board of County Commissioners,* 857 P.2d 477, 478 (Colo.App.1992)(*Bertrand I* ), *rev'd,* 872 P.2d 223 (Colo.1994) (*Bertrand II* ), the division followed the reasoning in *Bain.* It concluded that a road grader was not a "motor vehicle" because it was not designed primarily to convey persons and cargo. Rather, it was "mobile machinery" or "self-propelled construction equipment" that was used to build, to maintain, or to repair roads.

¶ 27 In *Williams v. State,* 874 P.2d 465, 467 (Colo.App.1993) (*Williams I* ), *judgment vacated* (Colo.1994), the division concluded that a dump truck with an attached snow blade was not a "motor vehicle" when it was being used as a snowplow because the truck fit the definition of "snowplow," which is now codified as section 42–1–102(91), C.R.S.2012. This definition included vehicles that are adapted to remove snow and ice from highways. The division reasoned that the proper focus was on the "design and use of the vehicle at the time of the accident." 874 P.2d at 467. Because the truck was being used as a snowplow to maintain the road at the time of the accident in that case, the division reasoned that the truck was not primarily being used to transport persons or cargo at that time. Rather, it was "mobile machinery." *Id.*

#### 2. Supreme Court Review of Opinions Decided Before the 2007 Amendment

¶ 28 The supreme court granted certiorari in *Bertrand I* and *Williams I.* In *Bertrand II,* 872 P.2d at 228–29, the supreme court recognized that the CGIA did not define the term "motor vehicle," and that the division in *Bain* had employed the definition of "motor vehicle" found in section 42–1–102.

¶ 29 The supreme court held that this was error because "the interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent." *Bertrand II*, 872 P.2d at 228. The court then provided two examples of such unreliability. First, "the definitions contained in the Uniform Motor Vehicle Law are tailored to the unique objectives of that law and were not enacted to further the purposes of the [CGIA]." *Id.* Second, "numerous statutes" define the term "motor vehicle," and some of those definitions are broader than the one found in the Uniform Motor Vehicle Law. *Id.*

¶ 30 As a result, the court concluded that "the decision of the *Bain* [division] to opt for the definitions in the Uniform Motor Vehicle law finds no basis in the [CGIA]." *Id.* The court determined, instead, that it would employ a dictionary definition of the term "motor vehicle," which includes any "vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways." *Id.* at 229 (quoting *Webster's New World Dictionary of the American Language* 930 (2d College ed.1974)). The court then remanded the case to the trial court to determine whether, under the dictionary definition, the road grader was a motor vehicle.

¶ 31 The supreme court vacated the division's decision in *Williams I* and remanded the case to the division for reconsideration in light of *Bertrand II.* In *Williams v. State*, 879 P.2d 490, 491 (Colo.App.1994) (*Williams II* ), the division then applied the dictionary definition of "motor vehicle" and concluded that a dump truck with an attached snowplow blade was a motor vehicle. Thus, the public entity was not immune under the CGIA. *Id.*

### 3. Court of Appeals Case Decided After the 2007 Amendment

¶ 32 *Herrera*, like *Williams I* and *II,* considered whether a dump truck that had been modified by the addition of a snowplow blade was a motor vehicle. However, *Herrera* involved an analytical wrinkle that did not exist when *Williams I* and *II* were decided: the effect of the 2007 amendment.

¶ 33 In deciding that the dump truck was a motor vehicle, the *Herrera* division stated that the 2007 amendment constituted a legislative decision (1) to "legislatively overrule" the supreme court's reliance on a dictionary definition of "motor vehicle" in *Bertrand II*; and (2) to incorporate the statutory definition of "motor vehicle" found in section 42–1–102 into the CGIA. *Herrera*, 221 P.3d at 426–27.

¶ 34 Applying that definition, the division held that the dump truck's function at the time of the accident was irrelevant to the analysis of whether it was a motor vehicle. The proper focus was whether the dump truck with the attached snowplow blade was "generally and commonly used to transport persons and property." § 42–1–102(58). The division held that the dump truck met this definition, and, therefore, the public entity was not immune under the CGIA.

¶ 35 As part of its analysis, the division rejected the public entity's argument that the dump truck could not be a motor vehicle because it was, instead, a "snowplow," as that term is defined by section 42–1–102(91). The division considered a variety of definitions found in section 42–1–102, ranging from "authorized emergency vehicle," to "motorcycle," to "bicycle." The division then reasoned that "[n]othing in the statute provides that defined terms are mutually exclusive"; "the statute includes examples of defined terms falling into multiple categories"; "[t]he inclusion of similar, overlapping terms indicates that terms defined in the statute are not mutually exclusive"; and "some or all of these terms may fall under the statutory definition of 'motor vehicle.' " *Herrera*, 221 P.3d at 427–28. Although the division mentioned the definition of "mobile machinery" in describing the decision in *Williams I,* it did not otherwise consider that definition in its analysis.

### IV. Analysis

¶ 36 As recognized above, this appeal presents a question that was not answered in *Herrera:* are the definitions of "motor vehicle," on the one hand, and "mobile machinery," on the other hand, mutually exclusive? We conclude that they are and, as result, that the street sweeper is not a motor vehi-

cle. These conclusions are supported by the following reasons.

¶ 37 First, we compare the plain language of the relevant statutes.

1. The 2007 amendment defined "motor vehicle" by referring to the definition in section 42–1–102.

2. As pertinent here, section 42–1–102(58) further defines "motor vehicle" to be (1) any self-propelled vehicle (2) that is designed *primarily* for travel on public highways and (3) that is *generally and commonly used* to transport persons or property over public highways.

3. Again as pertinent here, at the time of the accident in this case, section 42–1–102(54) defined "mobile machinery" to be (1) a self-propelled vehicle (2) that is *not primarily designed* for the transportation of persons or cargo over the public highways, (3) including, but not limited to, wheeled vehicles that are *commonly used* in the maintenance of roadways.

¶ 38 Second, based on this comparison, we recognize that each definition combines two factors: design and use. A motor vehicle is primarily designed to travel on public highways *and* is generally and commonly used to transport persons and property over those highways. Mobile machinery is not primarily designed to transport persons or cargo over the public highways *and* is commonly used in the maintenance of roadways.

¶ 39 Third, we read the definitions together. *See Glover v. Innis,* 252 P.3d 1204, 1207 (Colo.App.2011)("When possible, we interpret a statute to give consistent, harmonious, and sensible effect to all of its parts."). After doing so, we see that mobile machinery is not primarily designed to perform a motor vehicle's general and common use, and that its common use is different.

■ ¶ 40 Fourth, the uncontested facts presented at the *Trinity* hearing establish that the street sweeper does not perform the general and common use of a motor vehicle because it is not primarily designed for the transportation of persons or cargo over the public highways. It travels at a maximum speed of twenty miles per hour; it is driven and operated by one person; it does not carry passengers; it uses its flashing lights when operating; it has two steering wheels and rocker pedals to allow for operation from either side; and it is stored in one of four locations throughout the city because its slow speed makes longer travel impractical. Further, the record establishes that the street sweeper's common use is to maintain the city's streets by cleaning them and removing debris. Moreover, it is registered as "mobile machinery."

¶ 41 Based on these facts, we conclude that the street sweeper is mobile machinery, and not a motor vehicle, under the CGIA. We recognize that this conclusion echoes the holdings of *Bain* and *Bertrand I,* both of which were overruled by *Bertrand II.* But as the division in *Herrera* recognized, the analysis in *Bertrand II* is no longer controlling because of the 2007 amendment. And we are persuaded by the analysis in *Bain* and *Bertrand I,* which focused on the definitions subsequently incorporated into the CGIA by the 2007 amendment. These definitions led the divisions in those cases to reach conclusions similar to the one we reach here: a backhoe and a road grader—self-propelled vehicles designed to perform maintenance or construction functions other than transporting persons or cargo over the public highways—are not motor vehicles, but, instead, are mobile machinery or self-propelled construction equipment.

¶ 42 Fifth, the street sweeper is different from the dump truck with the attached snowplow blade analyzed in *Herrera.* There, the division held, as a matter of law, that the dump truck was generally and commonly used to transport persons and property. Here, the different facts have led us to conclude that the street sweeper is not primarily designed for such use.

¶ 43 Further, the public entity in *Herrera* argued that the dump truck was properly considered a "snow plow." That term is defined in section 42–1–102(91) to be "any vehicle originally designed for highway snow and ice removal or control or subsequently adapted for such purposes which is operated by or for the state of Colorado or any political subdivision thereof." The definition of "snow plow" does not include a factor—cen-

tral to our analysis—that appears in the definition of "mobile machinery." Unlike the definitions of "motor vehicle" and "mobile machinery," the definition of "snowplow" does not address whether it is generally and commonly used, or primarily designed, to transport persons or property over the public highways. Consequently, the division in *Herrera* held that the term "snowplow" was not mutually exclusive of the term "motor vehicle," and *Herrera* is distinguishable from the circumstances presented here.

¶ 44 Moreover, as in *Herrera* and contrary to the division in *Williams I*, our focus is not on the street sweeper's use at the time of the accident. Rather, as indicated above, our analysis considers its design and common use.

¶ 45 We hold that the trial court erred when it concluded that the street sweeper was a motor vehicle, and, as a result, that the city's immunity was waived under section 24–10–106(1)(a).

### V. Attorney Fees

¶ 46 The city seeks an award of the attorney fees that it incurred in responding to the driver's complaint. We conclude that an award of reasonable attorney fees is appropriate here, and we remand to the trial court to determine those fees and award them to the city.

¶ 47 Section 13–17–201, C.R.S. 2012, requires a court to award reasonable attorney fees to the defendant when a court dismisses a plaintiff's tort action before trial under C.R.C.P. 12(b). *Crandall v. City & Cnty. of Denver*, 238 P.3d 659, 665 (Colo.2010)(*Crandall II*); *Smith v. Town of Snowmass Vill.*, 919 P.2d 868, 873 (Colo.App. 1996) (an award of attorney fees is mandatory when a trial court dismisses an action under the CGIA for lack of subject matter jurisdiction). In addition, a party that successfully defends an appeal of an action that was dismissed on a pretrial motion to dismiss under the CGIA is entitled to recover its reasonable appellate attorney fees under section 13–17–201. *Crandall II*, 238 P.3d at 665; *Wark v. Bd. of Cnty. Commissioners*,

47 P.3d 711 (Colo.App.2002). However, because the trial court is in a better position to determine the reasonable attorney fees incurred by the city, we remand the case for further proceedings on that issue. *See* C.A.R. 39.5; *Stauffer v. Stegemann*, 165 P.3d 713, 719 (Colo.App.2006).

¶ 48 We note that, in the prior appeal in this case, the division declined to award attorney fees because, "[a]lthough the city has prevailed to an extent [in the first appeal], the issue whether the city is immune in this case has not yet been finally resolved." The issue of the city's immunity has now been finally resolved in its favor. Therefore, on remand, the court shall consider the attorney fees incurred in both appeals when awarding the city the reasonable attorney fees it incurred in responding to the driver's complaint.

¶ 49 The order is reversed. The case is remanded to the trial court with directions to dismiss the driver's complaint with prejudice and to conduct additional proceedings to determine and award reasonable attorney fees to the city.

Judge ROMÁN and Judge MÁRQUEZ * concur.