Opinion by CHIEF JUDGE LOEB
¶ 1 Defendants, Daniel R. Carneal and the Board of County Commissioners of the County of El Paso, Colorado (County Board), appeal the trial court's order denying their motion to dismiss this tort action filed by plaintiff, Tina Roper. We affirm and remand for further proceedings.
I. Background
¶ 2 Carneal, an El Paso County employee, was driving a county-owned snowplow when he allegedly failed to stop at a stop sign. Roper drove off the road to avoid Carneal and crashed into a culvert and fence. She suffered personal injuries and damage to her car. Roper then filed this action against Carneal and the County Board alleging claims of negligence per se, negligence, respondeat superior, and property damage/loss of use.
¶ 3 Defendants moved to dismiss Roper's claims for lack of subject-matter jurisdiction pursuant to C.R.C.P. 12(b)(1), arguing that they were immune from suit under the Colorado Governmental Immunity Act (CGIA). The CGIA generally bars tort-related claims against public entities and employees, but waives immunity for a public employee's operation of a motor vehicle under certain circumstances. § 24-10-106(1)(a), C.R.S. 2014; § 24-10-118(2)(a), C.R.S. 2014. Defendants argued that the undisputed facts showed that *891 the snowplow was "special mobile machinery" rather than a "motor vehicle," and, therefore, the motor vehicle waiver of immunity did not apply. In the alternative, defendants requested an evidentiary hearing under Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916 (Colo. 1993), to resolve any factual dispute pertaining to whether the snowplow was a "motor vehicle."
¶ 4 After briefing, the trial court issued a written order denying defendants' motion to dismiss plaintiff's claims. The trial court found that the following relevant facts were undisputed:
Carneal was driving a dump truck with special modifications. These modifications included the addition of a bed and hydraulic dumping system, mounting of a snowplow blade, mounting of a tailgate sander, and mounting of yellow and blue emergency lights to the top of the truck. The truck is used exclusively on county roads to remove snow and ice.
Based on these facts, the trial court concluded that the snowplow was a "motor vehicle" rather than "special mobile machinery." Accordingly, the trial court held that governmental immunity was waived under the CGIA. Because the court resolved the immunity issue on undisputed facts, the court also denied defendants' alternative request for an evidentiary hearing.
¶ 5 Defendants appealed, and the case was stayed pending this interlocutory appeal pursuant to section 24-10-108, C.R.S. 2014.
II. Standard of Review
¶ 6 Whether a public entity is immune from suit under the CGIA is an issue of subject-matter jurisdiction. Tidwell ex rel. Tidwell v. City & Cnty. of Denver, 83 P.3d 75, 85 (Colo. 2003). The plaintiff has the burden of establishing that the public entity is not immune under the CGIA and, thus, that the trial court has jurisdiction over the claim. Id. ; Henderson v. City & Cnty. of Denver, 2012 COA 152, ¶ 21, 300 P.3d 977. "Although the burden falls upon the plaintiff, the burden is a relatively lenient one." Tidwell, 83 P.3d at 86.
¶ 7 Where, as here, the facts are undisputed and the issue is one of statutory interpretation, the appellate court reviews the trial court's jurisdictional ruling de novo. Id. at 81 ; Henderson, ¶ 21.
III. Applicable Law
A. CGIA
¶ 8 The CGIA provides that, as a general rule, public entities and employees are immune from liability for tort claims. § 24-10- 106(1); § 24-10-118(2)(a). However, the CGIA also waives governmental immunity in certain circumstances. As pertinent here, "immunity is waived by a public entity in an action for injuries resulting from ... [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." § 24-10-106(1)(a) ; see also § 24-10118(2)(a). The only disputed issue on appeal in this case is whether the snowplow constitutes a "motor vehicle" under this waiver provision or, instead, constitutes "special mobile machinery" not subject to the waiver.
¶ 9 In construing the CGIA, we must give effect to the legislature's intent. Tidwell, 83 P.3d at 81 ; Henderson, ¶ 20. To do so, "[w]e look to the language of the statute, giving words their plain and ordinary meaning." Springer v. City & Cnty. of Denver, 13 P.3d 794, 799 (Colo. 2000). If legislative intent is clear from the plain language of the statute, then other rules of statutory interpretation need not be applied. Id.
¶ 10 Divisions of this court have recognized that "[t]he General Assembly's intent in excluding the operation of motor vehicles from governmental immunity was 'to provide for compensation to persons injured by the negligent conduct of government employees.' " Herrera v. City & Cnty. of Denver, 221 P.3d 423, 425-26 (Colo. App. 2009) (quoting Grabler v. Allen, 109 P.3d 1047, 1051 (Colo. App. 2005) ).
¶ 11 "Because the [C]GIA's immunity derogates Colorado's common law, legislative grants of immunity must be strictly construed." Corsentino v. Cordova, 4 P.3d 1082, 1086 (Colo. 2000). Accordingly, "we broadly construe the CGIA provisions that *892 waive immunity in the interest of compensating victims of governmental negligence." Springer, 13 P.3d at 798. Any exceptions to these waivers must be strictly construed because the ultimate effect is to grant immunity. Corsentino, 4 P.3d at 1086.
B. Statutory Definitions
¶ 12 The CGIA incorporates the definition of "motor vehicle" from section 42-1-102, C.R.S. 2014. See § 24-10-103(2.7), C.R.S. 2014. As pertinent here, that statute defines "motor vehicle" as "any self-propelled vehicle that is designed primarily for travel on the public highways and that is generally and commonly used to transport persons and property over the public highways." § 42-1-102(58).
¶ 13 Section 42-1-102(93.5) defines "special mobile machinery" as follows:
(a) "Special mobile machinery" means machinery that is pulled, hauled, or driven over a highway and is either:
(I) A vehicle or equipment that is not designed primarily for the transportation of persons or cargo over the public highways; or
(II) A motor vehicle that may have been originally designed for the transportation of persons or cargo over the public highways, and has been redesigned or modified by the addition of mounted equipment or machinery, and is only incidentally operated or moved over the public highways.
(b) "Special mobile machinery" includes vehicles commonly used in the construction, maintenance, and repair of roadways, the drilling of wells, and the digging of ditches.
¶ 14 This definition was enacted in 2010. It replaced the definition of " 'mobile machinery' or 'self-propelled construction equipment.' " See Ch. 337, sec. 1, § 42-1-102(54), 1994 Colo. Sess. Laws 2099100. Where the old definition contained a single definitional paragraph, the new definition is broken down into discrete subsections. Apart from this stylistic change and minor changes in wording,[1] the two definitions are "much the same." Henderson, ¶ 22.
C. Relevant Cases
¶ 15 There are two Colorado cases, heavily relied on by the parties, that are relevant to our analysis, although neither is dispositive of the issue before us.[2]
¶ 16 In Herrera, 221 P.3d 423, a division of this court considered whether a dump truck that had been modified by the addition of a snowplow blade was a "motor vehicle" under the CGIA waiver of immunity. The public entity in that case argued that the vehicle could not be a "motor vehicle" because it was a "snowplow" as defined in section 42-1-102(91). Id. at 427. The division held that the two definitions were not mutually exclusive and concluded that the snowplow met the definition of "motor vehicle" under section 42-1-102(58). Id . The division therefore held that governmental immunity was waived. Id. at 424.
¶ 17 The parties did not raise, and the Herrera division did not consider, whether the snowplow there constituted "mobile machinery" under the then-existing definition of that term. Thus, the Herrera division did not interpret that term or analyze its relationship to the motor vehicle waiver of immunity.
¶ 18 A division of this court did analyze part of the definition of "mobile machinery" in Henderson, 2012 COA 152, 300 P.3d 977, a case involving governmental immunity for the operation of a street sweeper. The *893 Henderson division held that the terms "motor vehicle" and "mobile machinery" were mutually exclusive because their definitions contained different requirements for design and use of the vehicle. Id. at ¶¶ 36-39. The division concluded that the street sweeper's design and use fit the definition of "mobile machinery" rather than the definition of "motor vehicle." Id . at ¶¶ 40-42. In reaching this conclusion, Henderson explicitly distinguished the snowplow at issue in Herrera :
[T]he street sweeper is different from the dump truck with the attached snowplow blade analyzed in Herrera . There, the division held, as a matter of law, that the dump truck was generally and commonly used to transport persons and property. Here, the different facts have led us to conclude that the street sweeper is not primarily designed for such use.
Id . at ¶ 42. The division held that the motor vehicle waiver of immunity did not apply to the street sweeper. Id . at ¶ 45.
¶ 19 However, the Henderson division based its analysis only on the portion of the "mobile machinery" definition that is now subsection (I) of the definition of "special mobile machinery." See id. at ¶ 37 ; § 42-1-102(93.5)(a)(I). The division did not analyze what is now subsection (II), which applies to vehicles that have been redesigned or modified by mounted equipment or machinery. See § 42-1-102(93.5)(a)(II).
IV. Undisputed Facts
¶ 20 On appeal, neither party contends that the trial court erred in finding that the relevant facts were undisputed. Nor do they contend that remand for an evidentiary hearing is necessary. Accordingly, we base our analysis on the following undisputed facts in the record:
• The snowplow driven by Carneal was a dump truck with special modifications.
• These modifications included the addition of a bed and hydraulic dumping system, mounting of a snowplow blade, mounting of a tailgate sander, and mounting of yellow and blue emergency lights to the top of the truck.
• As modified, the snowplow is used exclusively on county roads to remove snow and ice.
• The snowplow carries a sand and salt mixture in the truck's bed, which it spreads over the roadway while plowing snow.
• The cab of the snowplow can seat at least two people. However, it is generally assigned only one operator.
V. Analysis
¶ 21 Defendants contend that the snowplow in this case is "special mobile machinery" rather than a "motor vehicle," and, therefore, they are immune from suit under the CGIA. It appears that, on appeal, defendants focus their argument on subsection (II) of the definition of "special mobile machinery." Specifically, defendants argue that, as modified, the snowplow is primarily designed and used for road maintenance, and it is only incidentally operated over the public highways. For the reasons set forth below, we conclude that the snowplow is a "motor vehicle" and, therefore, governmental immunity is waived.
A. Preliminary Issues
¶ 22 Before deciding which definition applies to the snowplow in this case, we must first determine whether the definitions are mutually exclusive. We must also determine whether the snowplow's modifications and use at the time of the accident are relevant to our analysis. We address each of these issues in turn.
1. Mutually Exclusive
¶ 23 We agree with defendants and the trial court that the definitions of "motor vehicle" and "special mobile machinery" are mutually exclusive.
¶ 24 As noted above, Henderson held that the definition of "motor vehicle" and the then-existing definition of "mobile machinery" were mutually exclusive. Henderson, ¶¶ 36-39. But the division in Henderson did not consider the particular provision at issue here-subsection (II) of the definition of "special mobile machinery." We, therefore, *894 undertake our own comparison of the language of sections 42-1-102(58) and 42-1-102(93.5)(a)(II).
¶ 25 To constitute a "motor vehicle" under section 42-1-102(58), the vehicle must be "designed primarily for travel on the public highways" and "generally and commonly used to transport persons and property over the public highways."
¶ 26 As pertinent here, "special mobile machinery" under section 42-1-102(93.5)(a)(II) is defined as "[a] motor vehicle that may have been originally designed for the transportation of persons or cargo over the public highways, and has been redesigned or modified by the addition of mounted equipment of machinery, and is only incidentally operated or moved over the public highways."
¶ 27 In our view, the plain language of section 42-1-102(93.5)(a)(II) indicates that this provision applies to vehicles that were originally "motor vehicles," but no longer meet that definition because of redesign or modification. Subsection (II) explicitly uses the term "motor vehicle" and echoes language from the "motor vehicle" definition to describe the vehicle's original design prior to modification. Subsection (II) then specifies that, after modification, such vehicles must be "only incidentally operated or moved over the public highways." This requirement is plainly incompatible with the general and common use of motor vehicles: transportation over the public highways. Thus, we conclude that a vehicle that qualifies as "special mobile machinery" under section 42-1-102(93.5)(a)(II) cannot also qualify as a "motor vehicle." The two definitions are mutually exclusive.
2. Modification and Use at the Time of the Incident
¶ 28 Defendants contend that we should consider both the vehicle's modifications (the attachment of a snowplow blade, tailgate sander, etc.) and its use as a snowplow at the time of the incident in determining which definition applies.
¶ 29 We agree with defendants that the vehicle's modifications are relevant to our analysis under both definitions. The division in Herrera considered whether the dump truck as modified by the addition of a snowplow blade met the design and use requirements in the definition of "motor vehicle." 221 P.3d at 427. Additionally, the portion of the "special mobile machinery" definition at issue here explicitly refers to vehicles that have been redesigned or modified. § 42-1-102(93.5)(a)(II). Thus, we must determine whether the vehicle driven by Carneal, as modified by the snowplow blade and tailgate sander, meets the definition of "motor vehicle" or "special mobile machinery."
¶ 30 Regarding the snowplow's use at the time of the incident, while not dispositive, that use may, in an appropriate case, shed some light on the question of a vehicle's common use. Both Henderson and Herrera held that the proper inquiry was the vehicle's design and common use, not its use at the time of the accident. Henderson, ¶ 44 ; Herrera, 221 P.3d at 427. In any event, this distinction is inconsequential here because the undisputed evidence shows that the snowplow, as modified, was used exclusively for snow and ice removal on county roads-the same as its use at the time of the accident. Thus, we consider whether that use fits within the definition of "motor vehicle" or "special mobile machinery."
B. "Motor Vehicle"
¶ 31 Pursuant to section 42-1-102(58), a "motor vehicle" must be (1) designed primarily for travel on the public highways and (2) generally and commonly used to transport persons and property over the public highways. We conclude that the snowplow in this case meets both elements of this definition.
¶ 32 As noted, a division of this court has previously concluded that a snowplow met the definition of "motor vehicle" under section 42-1-102(58). Herrera, 221 P.3d at 427. However, the analysis in Herrera focused on whether the statutorily defined terms "motor vehicle" and "snowplow" were mutually exclusive.[3] The opinion in Herrera does not *895 provide a detailed explanation of why the snowplow in that case met the design and use requirements under the definition of "motor vehicle." Thus, it offers limited guidance here.
¶ 33 We first consider whether the snowplow in this case was "designed primarily for travel on the public highways." § 42-1102(58). The undisputed evidence shows that the snowplow, as modified, is a dump truck designed to remove snow and ice from the public highways (specifically, county roads). The snowplow must necessarily travel on the public highways to perform this function. We are not persuaded by defendants' argument that the snowplow is designed primarily for road maintenance rather than travel. Because the snowplow's maintenance function-plowing snow on county roads-requires travel on the public highways, the snowplow is necessarily designed for both purposes. The record does not indicate that the snowplow is designed to function anywhere other than on the public highways. To the contrary, defendants acknowledge that it is used exclusively on county roads. Therefore, we conclude that the snowplow is "designed primarily for travel on the public highways." § 42-1-102(58).
¶ 34 We next consider whether the snowplow is "generally and commonly used to transport persons and property over the public highways." Id .
¶ 35 Although this provision refers to "persons and property," in our view, a vehicle is not required to transport both persons and property in order to be considered a motor vehicle. Colorado courts have recognized that, in interpreting the meaning of "and" and "or" in statutes, the substitution of one for the other may be necessary. See, e.g., Henrie v. Greenlees, 71 Colo. 528, 530-31, 208 P. 468, 469 (1922) (courts may substitute "or" for "and," or vice versa, to carry out the legislative intent); Smith v. Colo. Dep't of Human Servs., 916 P.2d 1199, 1201 (Colo. App. 1996). If we were to interpret section 42-1-102(58) to require transportation of both persons and property, a vehicle that transports only persons (such as a bus) or only property would be excluded from the definition of "motor vehicle." In our view, such an interpretation would be absurd and unreasonable. See § 2-4-201(1)(c), C.R.S. 2014 ("In enacting a statute, it is presumed that ... [a] just and reasonable result is intended."); A.S. v. People, 2013 CO 63, ¶ 12, 312 P.3d 168 ("We avoid statutory interpretations that would lead to absurd results."). We therefore substitute "or" for "and" in this provision. Accordingly, a vehicle that is generally and commonly used to transport either persons or property over the public highways may qualify as a "motor vehicle."
¶ 36 Here, the record shows that the snowplow carries a mixture of sand and salt held in the truck's bed, which it spreads over the roadway while plowing snow. In our view, the sand and salt mixture constitutes "property" under any ordinary sense of the term. See Springer, 13 P.3d at 799 (in interpreting statutes, we give words their plain and ordinary meaning); Black's Law Dictionary 1335-36 (9th ed. 2009) (defining "property" as "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised"); Webster's Third New International Dictionary Unabridged 1818 (2002) (defining "property" as "something that is or may be owned or possessed"). The snowplow transports this sand and salt mixture over the public highways as part of its function in maintaining those highways. Thus, we conclude that the snowplow is generally and commonly used to transport property (salt and sand) over the public highways, as required to meet the "motor vehicle" definition.
¶ 37 We disagree with defendants' contention that materials used for road maintenance should not be considered "property" under the definition of "motor vehicle." Specifically, defendants argue that if such materials were considered "property," then the inclusion of "vehicles commonly used in the construction, maintenance, and repair of *896 roadways" within the definition of "special mobile machinery" under section 42-1-102(93.5)(b), would be abrogated to the extent that any such vehicle carries materials used for those purposes. We are not persuaded. The distinction between a "motor vehicle" and "special mobile machinery" turns not on what type of materials constitutes "property," but rather on whether a vehicle is designed and used for transportation over the public highways. So long as maintenance vehicles are "only incidentally operated or moved over the public highways," as required under section 42-1-102(93.5)(a)(II), merely carrying maintenance materials or other property will not make them "motor vehicles." But where, as here, a vehicle operates and transports maintenance materials exclusively on the public highways, that vehicle meets the "motor vehicle" definition because it is "generally and commonly used" for transportation over those highways.
¶ 38 We note that the division in Henderson concluded that the street sweeper was not a "motor vehicle" despite the fact that it carried water and debris as part of its road maintenance function. Henderson, ¶¶ 15, 42. As we read Henderson, it does not hold that maintenance materials cannot constitute "property," nor does the division base its conclusion on those facts alone. Indeed, Henderson acknowledged Herrera 's holding that a snowplow was "generally and commonly used to transport persons and property," but concluded the street sweeper was factually different. Id. at ¶ 42. Moreover, Henderson did not require that the street sweeper be "only incidentally operated or moved over the public highways" because the street sweeper was not a modified vehicle under section 42-1-102(93.5)(a)(II). Thus, Henderson did not consider the relationship between subsection (II) and the "motor vehicle" definition. Because of these differences, Henderson 's analysis is not entirely applicable here.
¶ 39 Defendants also contend that the snowplow is not used to transport "persons" over the public highways because it is generally assigned only one operator and does not usually carry passengers. Because we conclude that the definition only requires transportation of persons or property, and the snowplow is generally and commonly used to transport property over the public highways, we need not consider whether being driven by a single operator constitutes transporting "persons" over the public highways.[4]
¶ 40 For the reasons set forth above, we conclude that the snowplow meets both elements of the definition of "motor vehicle" under section 42-1-102(58). We therefore conclude that the motor vehicle waiver of immunity under the CGIA applies.
C. "Special Mobile Machinery"
¶ 41 As relevant to modified vehicles, the "special mobile machinery" definition includes two elements: (1) the vehicle must be "redesigned or modified by the addition of mounted equipment or machinery" and (2) it must be "only incidentally operated or moved over the public highways." § 42-1-102(93.5)(a)(II). We conclude that the snowplow does not meet the second element and therefore is not "special mobile machinery."[5]
¶ 42 We interpret the word "incidentally" according to its plain and ordinary meaning. See Springer, 13 P.3d at 799 ; Harding v. Indus. Comm'n, 183 Colo. 52, 59, 515 P.2d 95, 98 (1973) ("[W]ords and phrases found in statutes are to be construed according to their familiar and generally accepted meaning."). Webster's Dictionary defines "incidentally" as "by chance" or "as a matter of minor import." Webster's Third New International Dictionary Unabridged 1142 (2002).
*897 That dictionary also defines "incidental" as "subordinate, nonessential, or attendant in position or significance." Id. Similarly, Black's Law Dictionary defines "incidental" as "[s]ubordinate to something of greater importance; having a minor role." Black's Law Dictionary 830 (9th ed. 2009).
¶ 43 Applying these definitions, we disagree with defendants' argument that driving on the public highways is only "incidental" to the snowplow's primary purpose of maintaining those highways by plowing snow. As the trial court stated in its written order:
[T]he driving on the highways that this truck does cannot be said to be "subordinate to something of greater importance" or to have only "a minor role." On the contrary, without the driving on the highways that the truck does in this case, the asserted "primary" purpose of the truck-plowing snow-would cease to exist. The driving on the highways is, therefore, not "incidental" to what this truck does. It is instrumental to what this truck does.
The undisputed facts show that the snowplow is exclusively driven over the public highways. Thus, its operation over the public highways is essential to its function in maintaining those highways. Under these circumstances, we agree with the trial court that the truck is not "only incidentally operated or moved over the public highways." § 42-1-102(93.5)(a)(II).
¶ 44 Because this second element of section 42-1-102(93.5)(a)(II) is not met, we need not address whether the snowplow blade and tailgate sander qualify as "mounted equipment or machinery" as required under the first element of that provision. Accordingly, we conclude that the snowplow does not constitute "special mobile machinery" under section 42-1-102(93.5).
VI. Conclusion
¶ 45 In sum, for the reasons set forth above, we conclude the snowplow is a "motor vehicle" under section 42-1-102(58), and therefore falls within the CGIA waiver of immunity for the operation of motor vehicles under section 24-10-106(1)(a). Accordingly, governmental immunity is waived, and Roper's lawsuit against defendants may proceed.
¶ 46 The order is affirmed, and the case is remanded for further proceedings.
Sternberg* and Nieto*, JJ., concur.

For example, the current definition refers to "machinery that is pulled, hauled, or driven over a highway," § 42-1-102(93.5)(a), C.R.S. 2014, whereas the old definition referred to "vehicles, self-propelled or otherwise," Ch. 337, sec. 1, § 42-1-102(54), 1994 Colo. Sess. Laws 2099-100.

Several older Colorado cases concerning governmental immunity for the operation of snowplows are of little use to our analysis because the statutory framework has changed since they were decided. See, e.g., Kallage v. Alvidrez, 969 P.2d 743, 745 (Colo. App. 1998) (relying on a dictionary definition of "motor vehicle" before the CGIA incorporated a statutory definition); Williams v. Colo. Dep't of Highways, 879 P.2d 490, 491 (Colo. App. 1994) (same), superseded by statute as stated in Henderson v. City & Cnty. of Denver, 2012 COA 152, ¶¶ 31-33, 300 P.3d 977.

Although neither party has addressed the issue, we note that the same definition of "snowplow" analyzed in Herrera still exists under section 42-1-102(91). That provision defines a "snowplow" as "any vehicle originally designed for highway snow and ice removal or control or subsequently adapted for such purposes which is operated by or for the state of Colorado or any political subdivision thereof." As modified, the snowplow in this case meets that definition.

We note that, for purposes of statutory construction, "[t]he singular includes the plural, and the plural includes the singular." § 2-4-102, C.R.S. 2014. Here, that rule might allow us to interpret the word "persons" under section 42-1-102(58) to include a single driver or operator. Nevertheless, such a holding is unnecessary given our conclusion that the snowplow is used to transport property over the public highways.

Because Henderson considered only what is now subsection (I) of the "special mobile machinery" definition, which is not at issue here, Henderson is not applicable to our analysis under subsection (II). See Henderson, ¶ 37.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 2-51-1105, C.R.S. 2014.